**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 5786967)
rclarkson@clarksonlawfirm.com
Yana Hart (*pro hac vice* forthcoming)
yhart@clarksonlawfirm.com
Tiara Avaness (*pro hac vice* forthcoming)
tavaness@clarksonlawfirm.com
Valter Malkhasyan (*pro hac vice* forthcoming)
vmalkhasyan@clarksonlawfirm.com
590 Madison Avenue, 21st FLR
New York, NY 10022
Tel: (213) 788-4050
Fax: (213) 788-4070

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMI KANDEL, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | <u>DEMAND FOR JURY TRIAL</u> |
| DR. DENNIS GROSS SKINCARE, LLC, a New York Limited Liability Company, | |
| Defendants. | |

Plaintiff Jami Kandel (**"Plaintiff"**), individually and on behalf of all others similarly situated, by and through her attorneys, brings this class action against Defendant Dr. Dennis Gross Skincare, LLC (**"Defendant"**) for engaging in a perpetual cycle of false advertising of its "C + Collagen" line of products and alleges as follows:

## NATURE OF THE ACTION

1.          As the fiercely competitive $300 billion-dollar cosmetics industry explodes,[1] some companies seek to gain a competitive advantage by misleading consumers regarding their products. Defendant, in attempt to differentiate their products from other products on the market, in around 2016 began selling a line of fake collagen cosmetic products that **do not contain any collagen whatsoever.**

2.          This is a class action lawsuit brought on behalf of all purchasers of the Dr. Dennis Gross C + Collagen product line, including C + Collagen Deep Cream, C + Collagen Serum, C + Collagen Mist, C + Collagen Eye Cream, and C + Collagen Biocellulose Brightening Treatment Mask (collectively, the **"Products"**), sold online and at retail outlets throughout the United States. Plaintiff seeks damages, restitution, and injunctive relief on behalf of a Nationwide Class (excluding California consumers) and a New York Consumer Subclass of consumers who purchased the Products within the state of New York. True and accurate representations of some of the Products' front labels are depicted below.

///

///

---

[1] FORTUNE BUS. INSIGHTS, *Cosmetics Market Size, Share & COVID-19 Impact Analysis*, BEAUTY & PERSONAL CARE/COSMETICS MARKET: FORTUNE: BUS. INSIGHTS, https://www.fortunebusinessinsights.com/cosmetics-market-102614.

*Figure 1 (Front Labels):*







*Figure 2 (Back Labels):*







3.       Consumers are deceived by Defendant's uniform labeling and advertising of the Products as "C + Collagen" believing that they are purchasing skincare Products which contain Vitamin C and collagen. In reality, the Products do not contain collagen or collagen amino acids. Instead, they contain vegetable amino acids which are neither collagen nor collagen amino acids.

4.       Consumers rely on Defendant's uniform, bold typeface front label "Collagen" claim under the mistaken belief that the Products contained collagen, when in reality, the Products are entirely devoid of collagen.

5.       Defendant knows that consumers are willing to pay more for collagen, and, in fact, added the word "collagen" to the label to capitalize on consumers' desire of collagen, with the intention that consumers rely on uniform "collagen" claim which prominently appears on every label, advertisement, communication with the consumers.

6.       Defendant does not advise its consumers that its products are entirely devoid of collagen.

7.       In fact, consumers are not typically sophisticated in chemistry to know that Defendant's products are devoid of collagen. Even if consumers review nearly every side of the product packaging, they are reassured that the Products contain collagen (or at the very minimum collagen amino acids sourced from collagen).

///

///

///

///

///

*Figure 3 (Side Labels):*





///

///

///

///

///

///

*Figure 4 (Side Labels):*






*Figure 5 (Side Labels):*






///

///

///

///

///

///

8

*Figure 6 (Side Labels):*



8.      Defendant's claims are false, misleading, deceptive, unfair, fraudulent, and unlawful under Sections 349 and 350 of New York's General Business Law ("**GBL**"); in breach of Defendant's express and implied warranties; and resulting in Defendant's unjust enrichment.

9.      Defendant's false and deceptive claims are uniformly advertised through its front label, packaging, website, and other media, in violation of consumer laws.

10.     Through its false, misleading, and deceptive advertising, Defendant has duped thousands or more consumers into buying the Products at stores across New York, and the nation, based on its material claims that the Products contain collagen.

11.     Plaintiff and members of the Nationwide Class and the New York Consumer Subclass purchased the Products in reliance on Defendant's material misrepresentations. They would not have purchased the Products had they known the claims as described herein were false, deceptive, and misleading.

## PARTIES

12.     **Plaintiff Jami Kandel** is, and at all times relevant hereto was, a citizen of New York residing in Brooklyn.

13.     Plaintiff purchased the C + Collagen Serum Product at a Sephora store located on Broadway Street in New York in the Spring/Summer of 2022 for approximately $78.

14.     In making her purchase decision, Plaintiff relied upon Defendant's labeling, packaging, and advertising claims, including the bold typeface front label "Collagen" claim under reasonable belief that the Product contained collagen (as well as vitamin C). Plaintiff was unaware that the Product was entirely devoid of collagen, and as a result, Plaintiff lost money in the form of the price premium she paid for Product which falsely claims to contain collagen.

15.     Defendant and its agents prepared, approved, and disseminated the Products' labeling and advertising nationwide. Defendant designed the Products' labels to entice consumers who sought to purchase products containing collagen. If Plaintiff had known that the Product did not contain collagen, she would not have purchased the Product, let alone paid a "premium" for such a valued benefit. Plaintiff could have purchased a different product, and instead, she

10

purchased "C + Collagen," reasonably interpreting the label to convey that the Product contains both, vitamin C and collagen.

16.     Plaintiff is entirely unaware of any product in the marketplace that would use the "+" for anything other than "and." Plaintiff is unaware of any advertisement from Defendant in which Defendant advises consumers that the Products do not contain any collagen, or that the label is intended to mean something other than prominently listing the ingredients – Vitamin C and Collagen.

17.     Plaintiff desired to purchase a product which contain real collagen, and was duped by Defendant's false and misleading advertisement, which affects consumers and competition.

18.     **Defendant Dr. Dennis Gross Skincare, LLC** is a limited liability company headquartered in New York. Dr. Dennis Gross Skincare, LLC maintains its principal business office at 444 Madison Ave. Suite 500, New York, NY 10022. Dr. Dennis Gross Skincare, LLC, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New York. Dr. Dennis Gross Skincare, LLC is an owner, manufacturer, seller, and/or distributor of the Dennis Gross C + Collagen product line and is a company that created and/or authorized the false, misleading, and deceptive labeling and packaging for the Products.

19.     Defendant selected the "C + Collagen" names because it believed this name would sell and entice consumers to purchase the Products.

20.     Defendant was aware that consumers tend to value and purchase products which contain collagen representations.

11

21.     Defendant, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that the claims about the Products and, in particular, the claims suggesting and/or outright stating that the Products contain collagen are false, deceptive, and misleading. Defendant affirmatively misrepresented the contents and benefits of the Products in order to convince the public and the Products' users to purchase and use the Products, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

23.     Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of New York and purchased the Product within this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, label, packaging, and Internet advertisements, among other advertising.

24.     Defendant is subject to personal jurisdiction in New York because Defendant is headquartered in New York, and all of its business operations, including related to the sale, distribution, and marketing of the "C + Collagen" line of products, stem from New York.

## FACTUAL ALLEGATIONS

25.     Collagen is the single most abundant protein found in the cartilage, bone, and tissues of animals, fish, and humans.[2] It is a major insoluble fibrous protein in the extracellular matrix and connective tissue.[3] It is found in tendons and ligaments, as well as the cornea, cartilage, bones, gut, blood vessels and intervertebral discs.[4] Collagen is not found in plants.[5]

26.     Collagen has been linked to youthful skin, hair, and nails.[6] As a result, sales of collagen anti-aging products in the United States are booming as consumers look to improve their skin, hair, and nails.[7] In fact, the United States collagen market is expected to double in size over the next decade with much of that growth coming from cosmetics.[8]

---

[2] Ananya Mandal, MD., *What is Collagen*, News Med Life Scis., https://www.news-medical.net/health/What-is-Collagen.aspx ("In nature, collagen is found exclusively in animals, especially in the flesh and connective tissues of mammals."); INTERNATIONAL FOOD RESEARCH JOURNAL 22(1), Hashim, P., Ridzwan, M. M. S., Bakar, J., & Hashim, M. D., *Collagen in food and beverage industries*, (2015); EC Nutrition, Raman, M., & Gopakumar, K., *Fish collagen and its applications in food and pharmaceutical*, (2018) ("Collagen is the most abundant and ubiquitous protein in animal origin, which comprising approximately 30% of total protein. Collagen is mainly presents in all connective tissues, including animal skin, bone, cartilage, tendon and blood vessels.").

[3] *Id.*

[4] *Id.*

[5] Jane B. Reece, Noel Myers, & Lisa A. Urry, Campbell Biology 688 (Australian and New Zealand ed. 2015) ("The most abundant of these proteins is collagen, which is not found in plants or fungi."); J.E. Murray et al., Pharmacognosy: Fundamentals, Applications, and Strategy 477- 494 (Simone Badal & Rupika Delgoda eds., 2017) (stating that fibrous proteins, including collagens, are not found in differentiated plants).

[6] *See generally*, Sally Wadyka, The Real Deal on Collagen: *Can Popping a Pill or Eating Foods with Collagen Improve your Skin, Hair, Nails, or Joints?* CR: Consumer Reports (Oct. 13, 2020), https://www.consumerreports.org/supplements/the-real-deal-on-collagen/; see also Yola Robert, *Here's Why Wellness Brands Are Investing Into Collagen*, Forbes (Nov. 15, 2021, 6:41 PM), https://www.forbes.com/sites/yolarobert1/2021/11/15/heres-why-wellness-brandsare-investing-into-collagen/?sh=29a438223a13 (noting that the "global collagen market was at an estimated $3.5 billion in 2018 and jumped to $8.36 billion in 2020 with anticipated growth to $16.70 billion by 2028")

[7] *Id.*

[8] *Id.*

27.      Honest collagen cosmetic manufacturers sell products that actually contain collagen, while honest amino acid cosmetic manufacturers are careful not to deceptively label their products as containing collagen. The latter otherwise label and advertise their products as containing "amino acids," "peptides," or "boosters." Truth in advertising and labeling of collagen cosmetics is critical to ensuring fair competition and a properly functioning marketplace.

28.      Consumers seek products containing collagen for the *perceived* benefits including but not limited to antiaging, moisturizing, and wrinkle reduction. Consumers prefer skincare products which contain collagen over other non-collagen products.

29.      Defendant uniformly and consistently labels and advertises the Products as containing "C + Collagen" – meaning they contain Vitamin C and Collagen. While the Products contain Vitamin C, **the Products contain zero collagen**.

30.       Defendant lists purported "Collagen Amino Acids" as an ingredient in the Products. However, amino acids are just the building blocks of proteins in the human body, of which collagen is but one example. Amino acids are as different from collagen as random pile of screws, bolts, and metal to a Rolls Royce. If amino acids are like letters in the alphabet, collagen is akin to Shakespeare's play "Hamlet."

31.      Collagen is a molecule containing thousands of amino acids, intertwined in a specific order, requiring proper arrangement, assembly, under specific conditions, while amino acids are significantly less complex molecules that do not have the same structure, function, or benefits of collagen.[9]

---

[9] BCCAMPUS, *Concepts of Biology*, Chapter 2.3 Biological Molecules, (available at https://opentextbc.ca/biology/chapter 2-3-biological-molecules (explaining the difference between amino acids and proteins).

14

*Figure 7*



32.      Defendant's Products do not contain any collagen or amino acids sourced from collagen because the Products are vegan and thus, cannot be composed of or contain collagen or "collagen" amino acids because collagen is sourced exclusively from animals. **Plants do not and cannot produce collagen.**[10] In fact, plants do not contain the specific amino acid profiles, and are not rich in glycine, proline, and hydroxyproline, which are abundant within collagen molecules.[11]

33.      Even if hydrolyzed (meaning broken down in smaller particles), collagen contains rich and specific combinations of amino acids which are not and cannot be naturally sourced from plants.

---

[10] Jane B. Reece, Noel Myers, & Lisa A. Urry, Campbell Biology 688 (Australian and New Zealand ed. 2015) ("The most abundant of these proteins is collagen, which is not found in plants or fungi."); J.E. MURRAY ET AL., PHARMACOGNOSY: FUNDAMENTALS, APPLICATIONS, AND STRATEGY 477- 494 (Simone Badal & Rupika Delgoda eds., 2017) (stating that fibrous proteins, including collagens, are not found in differentiated plants).

[11] Katarzyna Pytkowska, *Hydrolysed Proteins in Cosmetic Productions, Part II*, RESEARCH GATE, https://www.researchgate.net/ profile/Katarzyna-Pytkowska (depicting within table 1 amino composition of plant proteins, which is significantly different from the amino acid composition derived from hydrolyzed collagen, depicted within table 2" [hydroxyproline 10.6, proline 12.9, glycine 28.5].); Gorissen, Stefan H. M., et al., *Protein Content and Amino Acid Composition of Commercially Available Plant-Based Protein Isolates - Amino Acids* SPRINGERLINK, 30 Aug. 2018 https://link.springer.come/article/10.1007/s00726-018-2640-5.

34.     Defendant's false labeling and advertising leads consumers to reasonably believe they are purchasing a product which contains collagen, and that this product is better than any other vitamin C product on the market because it also contains collagen. Consumers rely on Defendant's false and misleading label conveying that the Products contain collagen, and purchasing the Products in reliance on Defendant's false and misleading prominent "C + Collagen" front label.

35.     Defendant has made, and continues to make these false, deceptive, misleading, unfair, fraudulent, and unlawful claims and promises to consumers about the presence of collagen in the Products. In fact, Defendant marketed its C + Collagen Serum on the Times Square signage uniformly exposing potential consumers to its prominent C + Collagen label, despite the fact that the Products are entirely devoid of collagen.

///

///

///

///

///

///

///

///

///

///

///

///



36.     Plaintiff and the Class purchased the Products in reliance upon the challenged "Collagen" label and advertising claims.

37.     Plaintiff and the Class would not have purchased the Products had they known the Products did not contain collagen.

38.     Plaintiff believes that the market price for the Products would have been different had Defendant honestly advertised the Products as containing only Vitamin C.

17

39.     Defendant's conduct threatens nationwide and New York consumers by disseminating deceptive and misleading advertising of the Products. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition has a negative impact on the marketplace and reduces consumer choice.

40.     Upon information and belief, Plaintiff alleges that during the course of the deception Defendant has sold thousands of units of the Products based upon the false and deceptive labels.

41.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff and the Class would not have purchased the Products if they had known that the labeling as described herein was false.

42.     Plaintiff makes the allegations herein upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NO ADEQUATE REMEDY AT LAW

43.     Defendant's false and misleading statements should be enjoined due to the false, misleading, and/or deceptive nature of Defendant's false, deceptive, misleading, unfair, fraudulent, and unlawful claims that the Products contain collagen. In addition, Defendant should be compelled to provide restitutionary damages to consumers in an amount to be determined at trial.

44.     Plaintiff and members of both the Nationwide Class and the New York Consumer Subclass are entitled to equitable relief, as no adequate remedy at law exists.

a.  **Broader Limitations Period.** The statutes of limitations for the causes of action pled herein vary. The limitations period for unjust enrichment claims is six years,

18

which is three years longer than the statutes of limitations under GBL § 349 and GBL § 350. If Plaintiff's claims for equitable relief are not allowed to proceed, members of both Classes who purchased the Products more than three years before the filing of this complaint may be barred from any form of financial recovery.

b. **Broader Scope of Conduct.** The scope of actionable misconduct is broader under unjust enrichment/restitution than the other causes of action pled herein.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of both Classes because Defendant continues to fraudulently misrepresent the Products as containing "collagen." Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' "collagen" representation is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is

19

currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified the Class, the following remains unknown: the scope of the Classes, the identities of its members, their respective purchasing practices, prices of past/future Products sales, and quantities of past/future Products sales.

d. **Procedural Posture—Incomplete Discovery and Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No nationwide or New York class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserve the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

45.    Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a class consisting of "All persons who purchased the Products in the United States, <u>excluding California purchasers</u>, for personal use and not for

resale during the time period of six years prior to the filing of the complaint through the date of court order approving or granting class certification (the **"Nationwide Class"**).

46.      Plaintiff also seeks to represent a New York Consumer Subclass defined as: "All persons who purchased the Products in the State of New York, for personal use and not for resale during the time period of six years prior to the filing of the complaint through the date of court order approving or granting class certification (the **"New York Consumer Subclass"**). Said definitions may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

47.      Excluded from both the Nationwide Class and the New York Consumer Subclass are Defendant's officers, directors, and employees, and any individual who received remunerations from Defendant in connection with that individual's use or endorsement of the Products. California purchasers are also excluded as noted above.

48.      The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands throughout the United States and the state of New York.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

49.      Common questions of fact and law predominate over questions which may affect individual class members, including the following:

   a.      Whether Defendant's product contains collagen;

   b.      Whether consumers believe Defendant's product labels to convey that the Products contain vitamin c and collagen;

      c.      Whether Defendant's conduct violates New York General Business Law Section 349, *et seq.*;

      d.      Whether Defendant's conduct violates New York General Business Code Section 350, *et seq.*;

      e.      Whether Defendant's conduct constitutes a breach of express warranty;

      f.      Whether Defendant's conduct constitutes a breach of implied warranty;

      g.      Whether Defendant was unjustly enriched by its deceptive conduct;

      h.      Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

      i.      How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received.

50.      Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

51.      Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions. Plaintiff and the Class purchased the Products under the false belief that the Products contained collagen. Plaintiff and the Class relied upon Defendant's labeling, packaging, and advertising claims and would not have purchased the Products if they had known that the Products did not contain collagen.

52.      A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

53.     The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

54.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

55.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE

**Violation of New York General Business Law,**

**New York General Business Law § 349, *et seq*.**

**And Similar Statutes in Other States**

***(brought on behalf of the New York Consumer Subclass)***

56.     Plaintiff repeats and realleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

23

57.     Plaintiff brings this cause of action pursuant to Section 349, *et seq.*, New York General Business Law ("GBL"), on her own behalf and on behalf of all other persons similarly situated of the proposed New York Consumer Subclass against Defendant.

58.     The New York Consumer Subclass consists of thousands of persons, the joinder of whom is impracticable.

59.     There are questions of law and fact common to the New York Consumer Subclass, which questions are substantially similar and predominate over questions affecting the individual class members, as set forth hereinabove.

60.     New York's General Business Code section 349, *et seq.*, declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any services in this state."

61.     The conduct of Defendant alleged herein constitutes recurring "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and members of the New York Consumer Subclass seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

62.     There is no adequate remedy at law.

63.     Defendant misleadingly, inaccurately, and deceptively labels and advertises its Products to consumers.

64.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product as "C+ Collagen", when in fact the Products are devoid of collagen—is misleading in a material way in that it, *inter alia*, induced Plaintiff and members of the New York Consumer Subclass to purchase and pay a premium for the Products. Defendant made its untrue

24

and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.    Defendant's labeling and advertising of the Products induced Plaintiff and members of the New York Consumer Subclass to buy Defendant's Products and to pay a premium price for them. Specifically, Plaintiff and members of the New York Consumer Subclass reasonably relied on the material and false "collagen" claim to their detriment in that they purchased the Products and paid a premium price for them.

66.    Plaintiff and members of the New York Consumer Subclass have been injured inasmuch as they paid a premium for Products that—contrary to a reasonable interpretation of Defendant's labeling—do not contain any collagen whatsoever. Accordingly, Plaintiff and members of the New York Consumer Subclass received less than what they bargained and/or paid for.

67.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and members of the New York Consumer Subclass have been damaged thereby.

68.    All of the consumer-oriented conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice, and/or generalized course of conduct.

69.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. Plaintiff and members of the New York Consumer Subclass

seek actual damages of $50 for Defendant's violation of this Section. Plaintiff and the Class seek actual damages of $1,000 for Defendant's willful violation of this Section.

## COUNT TWO

**Violation of New York General Business Law,**

**New York General Business Law § 350, *et seq*.**

**And Similar Statutes in Other States**

*(brought on behalf of the New York Consumer Subclass)*

70.      Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

71.      Plaintiff brings this cause of action pursuant to Section 350, *et seq.*, New York General Business Law, on her own behalf and on behalf of all other persons similarly situated of the proposed New York Consumer Subclass against Defendant.

72.      Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful. 58. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows: The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

73.     Defendant's labeling and advertising contain untrue and materially misleading statements concerning the Products inasmuch as they misrepresent and create the net impression that the Products contains "collagen" when in reality, the Products contain no collagen whatsoever.

74.     The "collagen" misrepresentation is material because consumers seek collagen skincare products for its benefits for the skin and the misrepresentation is likely to mislead reasonable consumers into purchasing the Products.

75.     In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading inasmuch as the labels convey the net impression that the Products contain Vitamin C and Collagen.

76.     Defendant's collagen representations were specifically designed to induce reasonable consumers, like Plaintiff and members of the New York Consumer Subclass, to purchase the Products.

77.     Plaintiff and members of the New York Consumer Subclass have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Product which—contrary to Defendant's labeling and representations—did not contain any collagen. Accordingly, Plaintiff and members of the New York Consumer Subclass received less than what they bargained and/or paid for.

78.     Defendant's labeling, advertising, and packaging of the Products induced Plaintiff and members of the New York Consumer Subclass to buy Defendant's Products.

79.     Defendant violated GBL § 350 when it labeled and advertised the Products in an unfair, deceptive, untrue, and materially misleading way and disseminated these misrepresentations to the public through the Products' labeling, packaging, and advertising.

27

80.     Defendant's consumer-oriented conduct as alleged herein constitutes recurring, unlawful false advertising in violation of N.Y. GBL § 350.

81.     New York and Congress, by and through the Federal Trade Commission ("FTC"), have recognized consumers' rights to truth in advertising by prohibiting manufacturers, marketers, and sellers from making material misrepresentations that are likely to mislead to the reasonable or ordinary consumer.  *See*, *e.g.*, New York Gen. Bus. Law § 350, *et seq.*; 15 U.S.C. § 45 (Federal Trade Commission Act).

82.     As a direct and proximate result of Defendant's misconduct, Plaintiff and members of the New York Consumer Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than what Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the presence of "collagen" within the Products. Accordingly, on behalf of Plaintiff and the members of the New York Consumer Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT THREE

### Breach of Express Warranty

### *(brought on behalf of the Nationwide Class)*

83.     Plaintiff repeats and realleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

84.     Defendant expressly warrants that the Products contain collagen, as set forth above.  Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

85.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Nationwide Class.

86.     Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Nationwide Class by not providing Products that conform to the advertising and label claims.

87.     As a result of Defendant's breach of contract, Plaintiff and the Nationwide Class have been damaged in the amount to be determined at trial.

## COUNT FOUR

### Breach of Implied Warranty

### *(brought on behalf of the Nationwide Class)*

88.     Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

89.     Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

90.     Defendant is a merchant with respect to the Products, as it manufactures, distributes, and sells the Products nationwide.

91.     In order to be merchantable, goods must conform to the promises or affirmations of fact made on the container or labeling.

92.     Defendant breached the implied warranty of merchantability to Plaintiff and

29

the Nationwide Class in that the labels of the Products promised and affirmed that the Products contain collagen. Contrary to the promise and affirmation of fact, the Products do not contain collagen.

93.     As a result of Defendant's conduct, Plaintiff and the Nationwide Class did not receive merchantable goods as impliedly warranted by Defendant.

94.     Defendant did not exclude or modify the Products' implied warranty of merchantability.

95.     As a proximate result of Defendant's breach of its implied warranty, Plaintiff and members of the Nationwide Class incurred damages. Plaintiff and members of the Nationwide Class were damaged as a result of Defendant's failure to comply with its obligations under the implied warranty, since Plaintiff and members of the Nationwide Class paid for Products that did not have the promised quality and nature, did not receive the collagen that they bargained for, paid a premium for the Products when they could have instead purchased other less expensive alternative products, and lost the opportunity to purchase other, true collagen products.

96.     Plaintiff and members of the Nationwide Class are therefore entitled to recover all available remedies for said breach.

<u>**COUNT FIVE**</u>

**Restitution Based on Quasi-Contract/Unjust Enrichment**

***(brought on behalf of the Nationwide Class)***

97.     Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

98.     Defendant's conduct in enticing Plaintiff and members of the Nationwide Class to purchase the Products through the use of falsely and misleading labeling the Products

"Collagen" as described herein is unlawful because the "Collagen" statements contained on the Products' labels are untrue. Defendant took monies from Plaintiff and the Class for Products that did not contain collagen. Defendant has been unjustly enriched at the expense of Plaintiff and members of the Nationwide Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.

99.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Nationwide Class are entitled to restitution in an amount to be proved at trial.

## NEW YORK LAWS SHOULD APPLY TO THE NATIONWIDE CLASS

100.     New York has an interest in prohibiting Defendant's unlawful business practices and to deter such behavior, all of which stems from New York. Defendant's false advertising, development of campaigns, name selection, ultimate decisions to manufacture, develop, and sell the products with the prominent "C + Collagen" labels which do not contain any collagen, originate from New York. All Defendant's decision-making processes occur in New York.

101.     New York is at the heart of Defendant's fraudulent activities, where Products are developed, manufactured, and sold from New York, with false advertising label developed in New York. All Defendant's contracts related to the sale of these products at issue occur in from New York. Defendant's primary business offices are located in New York.

102.     If all class members were required to proceed under their own statutes, and file cases across 50 different states, the judicial system in 50 states would be overburdened and significantly impacted. In fact, New York courts have a special obligation to undertake the burden of this litigation to (a) protect the nationwide consumers and other affected businesses engaged

in honest advertising; (b) avoid the inconsistent rulings; and (c) avoid overburdening the judicial system across the entire nation.

103.     This action, and application of New York laws to the nationwide class would promote judicial economy, and provide recovery to the nationwide claimants, and ensure that the New York businesses comply with New York laws, avoid defrauding nationwide consumers by enticing them to buy their products through false and misleading advertising, and ensuring transparency in the marketplace.

104.     New York has significant interests in regulating and affecting conduct within its borders, especially since Defendant is incorporated in the state of New York and perpetrating the fraudulent advertising scheme from New York.

105.     In the alternative, Defendant's actions constitute violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states. Defendant violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

   a.  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, et seq.;

   b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, et seq.;

   c.  Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, et seq.;

   d.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq.;

   e.  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, et seq.;

   f.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, et seq.;

g.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, et seq.;

h.  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, et seq.;

i.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.;

j.  Georgia Fair Business Practices Act, § 10-1-390 et seq.;

k.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, et seq.;

l.  Idaho Consumer Protection Act, Idaho Code § 48-601, et seq.;

m.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, et seq.;

n.  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, et seq.;

o.  Iowa Consumer Fraud Act, Iowa Code §§ 714.16, et seq.;

p.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, et seq.;

q.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, et seq., and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, et seq.;

r.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, et seq.;

s.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, et seq,, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.,

t.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, et seq.;

u.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A; w.

33

Michigan Consumer Protection Act, § § 445.901, et seq.;

v.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, et seq.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, et seq.;

w.  Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, et seq.;

x.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq.;

y.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, et seq.;

z.  Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, et seq.;

aa. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, et seq.;

bb. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, et seq. ;

cc. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, et seq.;

dd. New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, et seq.;

ee. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, et seq.;

ff.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, et seq.;

gg. North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, et seq.;

hh. Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. et seq.;

ii.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, et seq.;

jj.  Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, et seq.;

kk. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, et seq.;

ll.  Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws

§ 6- 13.1-1, et seq.;

mm.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, et seq.;

nn. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, et seq.;

oo. Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, et seq.;

pp. Texas Stat. Ann. §§ 17.41, et seq., Texas Deceptive Trade Practices Act

qq. Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, et seq.;

rr. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, et seq.;

ss. Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, et seq.;

tt. Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, et seq.;

uu. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, et seq.;

vv. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, et seq.;

ww.    Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, et seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

A.    An order enjoining Defendant's unlawful behavior to ensure statutory compliance as set forth herein;

B.    Restitutionary, actual, statutory, compensatory, and punitive damages; and

C.    Reasonable attorneys' fees and costs.

35

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a jury trial on all triable issues.

DATED: March 7, 2023                    **CLARKSON LAW FIRM, P.C.**

                                        /s/ *Ryan J. Clarkson*
                                        Ryan J. Clarkson, Esq.
                                        Yana Hart, Esq. (*pro hac vice*)
                                        Tiara Avaness, Esq. (*pro hac vice*)
                                        Valter Malkhasyan, Esq. (*pro hac vice*)

                                        *Counsel for Plaintiff*