UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMI KANDEL, *individually and on behalf of all others similarly situated*,

Plaintiff,

– against –

DR. DENNIS GROSS SKINCARE, LLC,

Defendant.

**OPINION & ORDER**

23-cv-01967 (ER)

---

RAMOS, D.J.:

This putative class action arises from Jami Kandel's allegations that Dr. Dennis Gross Skincare, LLC ("Gross Skincare"), deceptively labeled and advertised its skincare products as containing collagen when, in fact, they do not. Before the Court is Gross Skincare's motion to dismiss the complaint. Doc. 30. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

Unless otherwise noted, the following facts are taken from the allegations in the complaint, which the Court accepts as true for purposes of this motion. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### A.  The Parties

Gross Skincare is a limited liability company with its headquarters and principal place of business in New York. Compl. ¶ 18. It manufactures, sells, and distributes the "Dr. Dennis Gross C + Collagen" line of skincare products, which includes (1) "C + Collagen Deep Cream"; (2) "C + Collagen Serum"; (3) "C + Collagen Mist"; (4) "C + Collagen Eye Cream"; and (5) "C + Collagen Biocellulose Brightening Treatment Mask" (collectively referred to as the "Products," or individually as a "Product"). *Id.* ¶¶ 2, 18. Gross Skincare and its agents created and disseminated the labeling, packaging, and advertising for the Products across the United States. *Id.* ¶¶ 15, 18.

Jami Kandel is a New York resident. *Id.* ¶ 12. She purchased the "C + Collagen Serum" Product in 2022 at a retail store in New York City for approximately $78. *Id.* ¶ 13. In making her purchase decision, she relied on the Product's labeling, packaging, and advertising, which included the term "Collagen" in bold typeface, leading her to believe that the Product contained collagen. *Id.* ¶ 14. Kandel alleges that consumers are willing to pay more for skincare products that contain collagen than those that do not and that she would not have purchased the Product at all had she known it did not contain collagen. *Id.* ¶¶ 5, 15, 28. Because the Product does not contain collagen, Kandel suffered an economic injury by paying a price premium for the Product. *Id.* ¶ 14.

**B. Collagen and Its Composition**

Collagen is a protein found exclusively in humans and animals that has been linked to youthful skin, hair, and nails. *Id.* ¶¶ 25, 26, 32. It is composed of thousands of amino acids intertwined in a specific, unique sequence. *Id.* ¶ 31.[1] Without being sequenced this way, amino acids do not confer the same benefits as collagen. *Id.*

**C. The Products' Labeling, Packaging, and Advertising**

The Products are uniformly branded with the phrase "C + Collagen," which appears on the front of each Product label and packaging and is also included in Product advertising. *Id.* ¶¶ 2 fig.1, 3, 7 figs.3–6, 35; Doc. 31, Ex. A.[2] Kandel alleges that this phrase is a reference to the Products containing Vitamin C and collagen. Compl. ¶ 29. Figure 1 shows the "C + Collagen" phrase on the front of each Product's packaging.[3]

---

[1] According to the complaint, amino acids are molecules that, when linked together, form proteins such as collagen. Compl. ¶¶ 30–31.

[2] Gross Skincare has submitted a declaration from a senior vice president that includes images depicting the Products' packaging. Doc. 31, Ex. A. Kandel "does not object to the introduction of the Product labels." Doc. 38 at 2. The Court will consider the images because the Products' packaging is integral to the allegations in the complaint. *See Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 348 n.5 (S.D.N.Y. 2020) (considering photograph of product labeling attached to declaration); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that courts may consider documents integral to the complaint when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)).

[3] *See* Doc. 31, Ex. A.

**Figure 1**







One side of each Product's packaging displays a list of ingredients.  Doc. 31, Ex. A.  The term "Collagen Amino Acids" is included in each of them.  *Id.*  The "C + Collagen Deep Cream," "C + Collagen Serum," and "C + Collagen Eye Cream" Products also feature the term "collagen amino acids" in a separate section titled "What It Is."  *Id.*  The "C + Collagen Mist" Product does so as well in a section titled "What's In It For You."  *Id.*

Finally, one side of each Product's packaging also contains a small symbol indicating that the Product is vegan.  *Id.*  Because collagen is sourced exclusively from animals, Kandel alleges, products that include it cannot be vegan.  Compl. ¶ 32.  Figure 2 shows the sides of the "C + Collagen Serum" packaging that display the list of ingredients, the section titled "What It Is," and the "vegan" symbol.[4]

---

[4] Only the packaging for the "C + Collagen Serum" is pictured.  While the layout and wording of the other Products' packaging differ, they all contain a list of ingredients including the term "Collagen Amino Acids," and a symbol identifying the Product as "vegan."  Doc. 31, Ex. A.  For the reader's convenience, the Court has underlined in blue the phrase "Collagen Amino Acids" and has added a blue arrow identifying the "vegan" symbol.  These marks do not appear on any of the Products' actual packaging.

**Figure 2**




Kandel claims that Gross Skincare knows that consumers will pay more for skincare products that contain collagen and intends for consumers to infer from the "Collagen" branding that the Products do so. *Id.* ¶ 5. However, while the Products do include Vitamin C, they are void of any collagen. *Id.* ¶ 29.

**D.  Kandel's Claims**

Kandel brings five New York state law causes of action on her own behalf:  (1) violation of General Business Law ("GBL") § 349; (2) violation of GBL § 350; (3)

breach of express warranty; (4) breach of implied warranty; and (5) restitution based on unjust enrichment.  *Id.* ¶¶ 56–99.

Kandel also seeks to represent two putative classes.  The first includes consumers who purchased the Products in the United States from March 2017 through the date on which the class is certified, excluding California purchasers and those who purchased the Products for resale rather than their personal use (the "Nationwide Class").  *Id.* ¶ 45.  The second is a subclass of New York consumers who purchased the Products for personal use in New York from March 2017 through the date on which the subclass is certified (the "New York Subclass").  *Id.* ¶ 46.

Kandel seeks to bring her first two claims on behalf of the putative New York Subclass and the other three claims on behalf of the putative Nationwide Class.  *Id.* ¶¶ 56–99.  Kandel argues that New York state law should apply to the Nationwide Class as a whole because Gross Skincare's conduct resulting in the allegedly unlawful business practices took place in New York, because New York has an interest in deterring such practices, and because doing so would promote judicial economy and protect nationwide consumers.  *Id.* ¶¶ 100–04.  In the alternative, she argues that Gross Skincare violated consumer protection statutes in each of the fifty states and the District of Columbia.  *Id.* ¶ 105.

Kandel, individually and on behalf of each putative class, seeks relief in the form of actual, statutory, compensatory, restitutionary, and punitive damages, as well as attorney fees and costs.  *Id.* at 35.  Injunctive relief was also initially requested in the complaint.  *Id.*  However, the parties later stipulated to the dismissal of the injunctive relief claims without prejudice.  Doc. 25.  Gross Skincare has now moved to dismiss the remaining claims.  Doc. 30.[5]

---

[5] Kandel requests that the Court strike certain "extrinsic evidence" and statements submitted by Gross Skincare in support of its motion to dismiss.  Doc. 38 at 1.  However, as set forth below, those materials are not relevant to the Court's determination that Kandel has sufficiently stated a claim for deceptive practices

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch*, 699 F.3d at 145.  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678–79.  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

---

and false advertising under GBL §§ 349 and 350, or its determination that her claims for breach of express and implied warranty and unjust enrichment must be dismissed.  Thus, Kandel's request to strike is denied as moot.  *See Lfoundry Rousset SAS v. Atmel Corp.*, No. 14 Civ. 1476 (LTS) (HBP), 2015 WL 4461617, at *7 (S.D.N.Y. July 21, 2015) (denying as moot motion to strike because it was unnecessary for the Court to rely on plaintiffs' expert report to decide the underlying motions).

Kandel also requests that the Court take judicial notice of three documents filed in another case against this defendant, *Gunaratna v. Dr. Dennis Gross Skincare, LLC*, No. 20 Civ. 02311 (MWF) (GJS) (C.D. Cal.). Doc. 36 at 2.  The three documents are Gross Skincare's motion to transfer that case to the Southern District of New York, a declaration by a Gross Skincare employee in support of the motion, and a reply brief in support of the motion.  *Id.*  Gross Skincare has not objected to Kandel's request.  "[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  Therefore, this Court takes judicial notice of the documents not for the truth of the matters asserted but solely as evidence that Gross Skincare moved to transfer the *Gunaratna* case to the Southern District of New York.

III.     **DISCUSSION**

**A.  Claims Brought on Behalf of the New York Subclass**

GBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  GBL § 350 also prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  False advertising is defined as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  N.Y. G.B.L. § 350-a(1).  "While the standard for recovery under Section 350 is specific to false advertising, it is otherwise identical to Section 349," *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 154 (S.D.N.Y. 2022), and therefore the Court will merge its analysis of the two claims.  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).  Claims brought under GBL §§ 349 and 350 are not required to meet the heightened pleading requirements of Rule 9(b).  *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 575–76 (S.D.N.Y. 2021).

Gross Skincare does not dispute that its challenged conduct is consumer-oriented.  Instead, its arguments are directed toward the second and third requirements of GBL §§ 349 and 350:  that Gross Skincare's conduct is materially misleading and that Kandel was injured as a result.  Doc. 32 at 6–14.  The Court addresses these arguments in turn.

*1.  Deceptive or Materially Misleading*

Conduct is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine*

*Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)). To survive a motion to dismiss, the plaintiff "must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (quoting *Sarr v. BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [the defendant's] actions."). While it is well settled that in appropriate circumstances, a court may determine at the motion to dismiss stage that an allegedly deceptive misrepresentation would not have misled a reasonable consumer as a matter of law, *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), multiple courts have indicated that such relief should rarely be granted, *see, e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020). That is because the question whether a representation is materially misleading "is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

Kandel alleges that the Products are deceptively presented as containing collagen despite completely lacking it. Compl. ¶ 29. In her view, the "C + Collagen" phrase, featured uniformly on the labeling, packaging, and advertising for the Products, means that it contains both Vitamin C *and* collagen, thus clearly implying the presence of collagen in the Products. *Id.* Kandel states that she is unaware of any other product that would use "+" to mean anything other than "and." *Id.* ¶ 16.

Gross Skincare maintains that the "C + Collagen" phrase does not imply that the Products contain collagen, but instead that the Vitamin C in the Products increases natural

production of collagen in the user's skin.  Doc. 32 at 1.  In this regard, Gross Skincare urges the Court to consider the Products' packaging as a whole.  *Id*. at 8.  Gross Skincare points to sections of the packaging indicating that the Products contain "collagen amino acids" and are vegan.  *Id*. at 1.  Because collagen is sourced exclusively from animals, Kandel alleges, products that contain collagen cannot be vegan.  Compl. ¶ 32.  Accordingly, as Gross Skincare's argument goes, because the Products are labeled "vegan," a reasonable consumer would understand that they do not contain collagen.  Doc. 32 at 1.  Gross Skincare argues that, therefore, the complaint "provides no facts showing it is plausible that a vegan product that clearly states it contains 'collagen amino acids' should be understood as containing intact collagen."  *Id*. at 5.

Since the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), before considering clarifying language on the back of product packaging, courts first determine whether an alleged misrepresentation on the front of a product's packaging is ambiguous.  *See Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 310–12 (S.D.N.Y. 2022).  If it is, the court may then consider whether the clarifying language is sufficient to make the challenged statement not misleading.  *Id.*  However, if the challenged statement is open to only one plausible interpretation, "shoppers expect that the rest of the package will confirm that representation and are not reasonably expected to investigate further."  *Nguyen v. Algenist LLC*, No. 22 Civ. 13 (KPF), 2022 WL 17251733, at *7 (S.D.N.Y. Nov. 28, 2022).

Gross Skincare's interpretation of the "C + Collagen" phrase is certainly less intuitive than Kandel's.  But even considering the supposedly clarifying statements that Gross Skincare points to, the Court finds that the packaging as a whole would still be misleading to a reasonable consumer.

First, the statement that the Products contain "collagen amino acids" does not dispel consumers of the reasonable belief that the Products contain collagen.  To a reasonable consumer, the repeated use of the word collagen likely only reaffirms that

collagen is an ingredient.  *See Gunaratna v. Dennis Gross Cosmetology LLC*, No. 20 Civ. 2311 (MWF) (GJS), 2020 WL 8509681, at *6 (C.D. Cal. Nov. 13, 2020).  In *Gunaratna*, a California class action challenging only four of the five Products at issue here, the court stated that "[i]f anything, the additional mention of collagen [on the back of the packaging] may have the effect of reassuring a consumer that the Products do contain collagen."  *Id.*  This is not a case in which the alleged misrepresentation is clearly refuted by a clarifying statement on the back of the packaging.  *See, e.g.*, *Bynum*, 592 F. Supp. 3d at 311–12 (concluding that a bag of almonds labeled as "Smoked Almonds" was not misleading because "[t]he ingredient list on Defendant's packaging is clear that the product was *not* subject to any smoking, but was instead *roasted* in oil and *flavored with* 'Natural Smoke Flavor'").  The "clarifying" statements that Gross Skincare relies on are anything but clear.  In order for these statements to clarify that the Products do not contain collagen, one must assume that a reasonable consumer would understand the difference between collagen and "collagen amino acids."  However, "collagen amino acids" is itself arguably a confusing term, and the labeling does nothing to explain its meaning.  Doc. 31, Ex. A.

Gross Skincare argues that the term is appropriate because:  "Collagen is a protein.  Amino acids are the building blocks of proteins.  It is undisputed that the Defendant's Products contain the amino acids that are the building blocks of collagen . . . ."  Doc. 32 at 2 (internal citations omitted).  Even if one accepts Gross Skincare's definition of "collagen amino acids," its argument that a reasonable consumer would glean from this term that the Products do not contain collagen relies on the assumption that a reasonable consumer understands that collagen is a protein composed of amino acids.  It cannot be assumed that a significant portion of the general consuming public possesses such knowledge.  *See Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 454 (S.D.N.Y. 2022) (in a case involving allegations that the defendant's body wash was deceptively labeled because it claimed to be beneficial for the skin's

microbiome despite containing ingredients that negatively affected it, the court noted that "defendant's theory that a reasonable consumer could simply consult the ingredients list . . . would require the Court to credit the notion that a reasonable consumer would be familiar with what the many ingredients listed are *and* those ingredients' properties, origins, and effects on the skin.  This is plainly untenable.").

The "vegan" symbol fares no better.  For the symbol to properly clarify that the product contains no collagen, the consumer must know that collagen is sourced exclusively from animals and that vegan products do not contain any ingredients sourced from animals.  Compl. ¶ 32.  The consumer must then connect the dots and infer that "collagen amino acids" must be something other than collagen.  And this all assumes that the consumer will even notice the word vegan.  *See Gunaratna*, 2020 WL 8509681, at *6 (rejecting a similar argument because "[t]he vegan symbol and accompanying text are quite small and difficult to find").  In other contexts, furthermore, the Second Circuit has explained that "the sufficiency of [a] disclaimer depends on its effect on consumers, which raises factual questions that are not well suited for resolution on a motion to dismiss."  *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 62 (2d Cir. 2022).  Thus, for purposes of evaluating this motion to dismiss, the Court credits Kandel's assertion that a reasonable consumer would understand the challenged packaging, labeling, and advertising as promising that the Products contain collagen.

Gross Skincare also argues that, even if the Court accepts Kandel's interpretation of the "C + Collagen" phrase and discredits the clarifying statements on the back of the packaging, the complaint must still be dismissed because Kandel has not alleged that the Products do not deliver the promised benefits.  Doc. 32 at 11.  However, Kandel does not claim to have been misled into believing the Products would have a certain effect.  Rather, she claims that the Products' packaging and advertising are misleading because they imply the presence of collagen in the Products when there is none.  Compl. ¶¶ 29, 64.  This is in sharp contrast to *Nguyen*—which Gross Skincare cites—where the

plaintiffs claimed that the defendants' collagen-based products were incapable of delivering anti-aging benefits promised by the packaging and advertising. *Nguyen*, 2022 WL 17251733, at *2; *see also Lopez v. L'Oréal USA, Inc.*, No. 21 Civ. 7300 (ALC), 2022 WL 4479891, at *3 (S.D.N.Y. Sept. 27, 2022) ("Plaintiffs argue that the inability to penetrate the skin necessarily means that the products cannot produce the claimed anti-aging effects."). It is the Products' lack of collagen, and not their effectiveness, that is at issue here. Compl. ¶¶ 29, 64. Therefore, Gross Skincare's argument is not persuasive.

For these reasons, the Court finds that Kandel has sufficiently pled that the Products' labeling, packaging, and advertising are materially misleading for purposes of GBL §§ 349 and 350.

### 2. Injury and Causation

Gross Skincare also argues that Kandel insufficiently pleads injury and causation because the complaint contains no factual allegations to support the conclusion that Kandel and the putative class paid a price premium for the Products. Doc. 32 at 13–14. "A plaintiff adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014). In *Koenig*, consumers brought a putative class action against sellers of milk products labeled "fat free." *Id.* at 276. Because the milk products did contain fat, the plaintiffs alleged that the label was misleading and brought, among others, claims under GBL § 349. *Id.* The Court rejected the defendants' argument that the plaintiffs failed to sufficiently allege injury and causation, finding that the plaintiffs had done so by alleging that they paid a price premium based on the defendants' misrepresentations. *Id.* at 288–89. Kandel has done so as well by alleging that the Products' "C + Collagen" phrase induced her and the putative class to pay a price premium for the Products. Compl. ¶¶ 14, 64–65.

As Kandel points out, this outcome is well supported by precedent. *See Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (an allegation "that 'the

price of the product was inflated as a result of defendant's deception' . . . meets the injury requirement" of GBL §§ 349 and 350 (quoting *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007))); *McNulty v. Polar Corp.*, No. 19 Civ. 8903 (LGS), 2020 WL 5658667, at *5 (S.D.N.Y. Sept. 23, 2020) ("Injury can be shown where the Complaint alleges 'an overpayment, or price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'" (quoting *Duran*, 450 F. Supp. 3d at 350)); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) ("[W]hile identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury, the failure to do so is not fatal to Plaintiff's claim." (internal citation omitted)).

Accordingly, the Court finds that Kandel has adequately alleged injury under GBL §§ 349 and 350. The motion to dismiss Kandel's claims on behalf of the New York Subclass is DENIED.

### B. Claims Brought on Behalf of the Nationwide Class

*1. Applicability of New York Law to the Nationwide Class*

Kandel seeks to bring her claims for breach of warranty and unjust enrichment on behalf of the Nationwide Class. Compl. ¶¶ 83–99. She argues that New York law should apply to the Nationwide Class because Gross Skincare's conduct resulting in the allegedly unlawful business practices took place in New York, because New York has an interest in deterring such practices, and because doing so would promote judicial economy and protect nationwide consumers. *Id.* ¶¶ 100–04. Gross Skincare replies that this argument "is divorced from factual allegations and fails to satisfy Plaintiff's pleading burdens under Rules 8 and 9(b)." Doc. 32 at 17. More specifically, it contends that "the Complaint fails Rule 8's basic threshold notice that the pleading 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (omission in original) (quoting *Twombly*, 550 U.S. at 555).

For the reasons set forth below, Kandel's claims for breach of warranty and unjust enrichment fail under New York law.

   a.  *Breach of Warranty Claims*

Kandel asserts that Gross Skincare expressly and impliedly warranted that the Products contain collagen through the "C + Collagen" phrase featured on all Product packaging, labeling, and advertising.  Compl. ¶¶ 84, 92.  Gross Skincare breached these warranties, she alleges, by failing to provide products that actually contain collagen.  *Id.* ¶¶ 86, 92.

Gross Skincare argues that, without "plausible allegations of deception," Kandel's breach of warranty claims must be dismissed.  Doc. 32 at 14.  It denies that it expressly warranted that the Products contain collagen and contends that "there can be no express warranty for something the Products never even say."  *Id.* at 14–15.  Gross Skincare further argues that Kandel fails to allege that the representations that the Products do make—that they boost collagen in the user's skin, contain "collagen amino acids," and provide anti-aging benefits—are false.  *Id.* at 15.  Finally, it argues that, regardless of any falsity, these statements do not "rise to the kind of specificity required for an express warranty."  *Id*.

It is not clear that these arguments would succeed.  If a plaintiff has sufficiently alleged that a product representation could be misleading to a reasonable consumer, the same allegations can be sufficient to plead the existence of a warranty.  *See Schneider v. Colgate-Palmolive Co.*, --- F. Supp. 3d ---, No. 22 Civ. 1294 (DNH), 2023 WL 4009099, at *6 (N.D.N.Y. June 15, 2023) ("As determined *supra* with regard to plaintiffs' consumer protection claims, plaintiffs have plausibly alleged that the products' representations could mislead a reasonable consumer . . . .  As a result, plaintiffs have plausibly alleged that the products' labeling and advertisements created an express warranty."); *see also Hesse*, 463 F. Supp. 3d at 469–70 (where the court had already found that the challenged representation could be misleading to a reasonable consumer for purposes of the

plaintiffs' statutory consumer protection claims, the court also declined to dismiss the plaintiffs' breach of express warranty claims). Therefore, since the Court has already determined that Kandel has plausibly asserted that a reasonable consumer could view the Products' packaging as a representation that the Products contain collagen, Gross Skincare's arguments are likely to fail for the same reasons the Court articulated above in arriving at that conclusion.

However, the Court need not rule on Gross Skincare's arguments at this time because, for the reasons set forth below, Kandel has failed to allege that she satisfied the notice requirement for breach of warranty claims in New York, which provides sufficient grounds to dismiss her claims.[6]

"[I]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'" *Lugones*, 440 F. Supp. 3d at 244 (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."). The same notice requirement applies to breach of implied warranty claims. *Smith v. Adidas Am., Inc.*, --- F. Supp. 3d ---, No. 22 Civ. 788 (BKS) (ML), 2023 WL 5672576, at *9 (N.D.N.Y. Sept. 1, 2023) ("As with a claim for breach of express warranty, timely notice of an alleged breach is necessary to

---

[6] The Court notes that this notice argument was not raised by Gross Skincare in its briefing. In general, "a court must afford a plaintiff the opportunity to be heard before dismissing a claim *sua sponte*." *Thompson v. Urban Recovery House, LLC*, No. 20 Civ. 9581 (PGG) (JLC), 2022 WL 589957, at *6 (S.D.N.Y. Feb. 28, 2022), *report and recommendation adopted*, 2022 WL 4547411 (S.D.N.Y. Sept. 29, 2022). But "granting leave to amend a complaint can suffice as such opportunity." *Id.*; *see also Mir v. Zucker*, No. 19 Civ. 6374 (CM), 2019 WL 5693695, at *8 (S.D.N.Y. Nov. 1, 2019) ("Because the Court dismisses *sua sponte* some of Plaintiff's claims for failure to state a claim, the Court grants Plaintiff leave to replead his claims in an amended complaint to be filed within thirty days of the date of this order."); *Perkins v. Kamco Supply Corp.*, No. 06 Civ. 5054 (DAB) (DF), 2007 WL 4207193, at *3 n.3 (S.D.N.Y. Nov. 27, 2007) (noting that argument was not raised by defendant and that court would afford plaintiff an opportunity to respond "by entertaining a motion for reconsideration"). Here, the Court will grant Kandel leave to amend the breach of warranty claims, which will provide "the requisite opportunity to be heard." *Thompson*, 2022 WL 589957, at *6. Kandel may also file a motion for reconsideration.

assert a claim for breach of an implied warranty under New York law."); *see also MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 100–101 (2d Cir. 2023) (affirming the dismissal of express and implied warranty claims because the plaintiff failed to allege that she provided the defendant with notice of the breach).

Although it is true that an exception to the notice requirement exists for cases where a plaintiff is a retail customer of a product intended for human consumption, this exception applies only in circumstances where a party alleges a physical, in addition to economic, injury. *Lugones*, 440 F. Supp. 3d at 245; *see also Colella v. Atkins Nutritionals, Inc*., 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018) ("Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury.").  Kandel has not alleged any physical injury as a result of purchasing the Product.  She claims to have suffered only an economic injury by paying a price premium for the Product she purchased.  Compl. ¶ 14.  Therefore, the notice requirement applies.

Nowhere in the complaint does Kandel allege that she provided Gross Skincare with any notice of the breach of warranty prior to filing the complaint.  Therefore, her breach of warranty claims are dismissed without prejudice.

Although Kandel fails to make such an argument in her brief, the Court notes that other courts in this Circuit have suggested that whether the filing of a complaint itself provides sufficient notice under N.Y. U.C.C. § 2-607(3)(a) is a question of fact for the jury.  *See Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 261 n.6 (E.D.N.Y. 2014) ("New York cases applying N.Y. U.C.C. § 2-607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases." (citing *Panda Cap. Corp. v. Kopo Int'l, Inc*., 662 N.Y.S.2d 584, 586–87 (App. Div. 1997))).  However, these cases are a "distinct minority," and "[m]ost courts in this District have concluded that the filing of a

complaint does not constitute adequate notice of a breach of warranty claim." *Wiggins v. Unilever United States, Inc.*, --- F. Supp. 3d ---, No. 21 Civ. 1964 (PGG), 2023 WL 7005147, at *17 (S.D.N.Y. July 26, 2023).  Indeed, the conclusion in *Tomasino* has been rejected on numerous occasions by other courts in this District.  *See, e.g.*, *Velez v. Lasko Prods., LLC*, --- F. Supp. 3d ---, No. 22 Civ. 08581 (JLR), 2023 WL 8649894, at *7–8 (S.D.N.Y. Dec. 14, 2023); *see also Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 246–47 (S.D.N.Y. 2021) (collecting cases).  Therefore, the Court finds that Kandel has failed to sufficiently plead her breach of warranty claims under New York law.

   *b.  Unjust Enrichment*

   "To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021) (quoting *Twohig*, 519 F. Supp. 3d at 167).  "However, 'unjust enrichment is not a catchall cause of action to be used when others fail.'"  *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021)) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  That is, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello*, 967 N.E.2d at 1185.  While Rule 8(d)(2) allows for alternative pleading, "an unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'"  *Valcarcel*, 577 F. Supp. 3d at 283 (quoting *Campbell*, 516 F. Supp. 3d at 394); *see also Smith*, --- F. Supp. 3d at ---, 2023 WL 5672576, at *11.

   Here, Kandel's claim for unjust enrichment is duplicative.  It relies on the same factual allegations as Kandel's other claims, and she offers no explanation for how they differ.  *See Smith*, --- F. Supp. 3d at ---, 2023 WL 5672576, at *12 (dismissing plaintiff's unjust enrichment claim "because the claim relies on the same factual allegations as

Plaintiff's other theories of recovery without explanation as to how it may differ");
*Valcarcel*, 577 F. Supp. 3d at 283 ("Here, [plaintiff] has offered no explanation of how its
unjust enrichment claim differs from its other causes of action, which seek relief from the
same conduct.  As such, the motion to dismiss [plaintiff]'s unjust enrichment claim is
granted." (internal quotation marks and citation omitted)).  Therefore, Kandel has failed
to sufficiently plead her claim for unjust enrichment under New York law.

### 2. Applicability of Other State Laws to the Nationwide Class

Kandel argues in the alternative that Gross Skincare violated consumer protection
statutes in each of the fifty states and the District of Columbia.  Compl. ¶ 105.  Gross
Skincare counters that the complaint fails to provide any facts showing how the laws in
each state differ or how Gross Skincare violated each state's laws.  Doc. 32 at 16–18.
According to Gross Skincare, therefore, "the Complaint's nationwide class allegations
fail as a matter of law under Rule 8."  *Id.* at 16.

The *Gunaratna* court addressed the same issue.  2020 WL 8509681, at *6–7.
There, Gross Skincare made the same argument it makes here.  *Id.* at *6 ("Defendant
argues that the Court should strike Plaintiff's nationwide class allegations because
Plaintiff pleads no facts showing how Defendant violated consumer protection statutes in
all fifty states and offers no explanation for how these statutes differ.").  The court held
that "Plaintiff fails to meet pleading requirements as to these claims, as the [complaint]'s
conclusory assertions offer no explanation as to how these state laws differ and include no
facts showing how Defendant allegedly violated each of these laws."  *Id.* at *7.  Just as in
*Gunaratna*, Kandel merely states that Gross Skincare has violated consumer protection
laws in each of the fifty states and the District of Columbia and lists each jurisdiction's
consumer protection statute.  Compl. ¶ 105.  However, "[m]erely listing the name and
code section of other states' consumer protection statutes does not suffice to state a
claim."  *Gunaratna*, 2020 WL 8509681, at *7.

Therefore, because Kandel's breach of warranty and unjust enrichment claims fail under New York law and she has not adequately alleged how or why other state laws should apply, Gross Skincare's motion to dismiss the claims brought on behalf of the Nationwide Class is GRANTED.

### C. Article III Standing to Bring Class Action Claims for Unpurchased Products

Kandel alleges that she purchased only one of the five Products at issue.  Compl. ¶ 13.  Gross Skincare argues that Kandel lacks standing to advance her claims for the four Products she did not purchase herself and that the complaint must therefore be dismissed as to these four Products.  Doc. 32 at 15–16.

Kandel maintains that she has standing to bring class action claims for these Products because they are sufficiently similar to the Product she purchased and because the same allegedly deceptive "C + Collagen" representation is found on all of the Products.  Doc. 34 at 19–21.  For the following reasons, the Court agrees with Kandel.

At the pleading stage, class action plaintiffs may bring claims for products they did not purchase themselves so long as (1) they are substantially similar to the products the plaintiff did purchase, and (2) they employ the same alleged misrepresentation. *Rivera v. S.C. Johnson & Son, Inc.*, No. 20 Civ. 3588 (RA), 2021 WL 4392300, at *9 (S.D.N.Y. Sept. 24, 2021).  In *Rivera*, class action plaintiffs brought claims under GBL §§ 349 and 350 against the manufacturer of a line of cleaning products that allegedly misled consumers by labeling the products as non-toxic.  *Id.* at *1–3.  Only three of the four products at issue had been purchased by any of the named plaintiffs.  *Id.* at *1. Despite this fact, the court held that they possessed standing to assert their claims for all the products because they had alleged "that the purchased and unpurchased products are largely similar and also that each makes the same exact misrepresentation, namely a label that reads 'Non-Toxic Formula.'"  *Id.* at *10.  The products were found to be substantially similar because they each contradicted the label by containing several of the same toxic

ingredients, they each commanded a price premium based on the misrepresentation, and the misrepresentation was made by the same defendant.  *Id.*

Similarly, the same misrepresentation is made on each of the Products because they all share the same "C + Collagen" phrase on their labels and packages.  Doc. 34 at 19–20; Doc. 31, Ex. A.  The Products are also all substantially similar to one another because, as in *Rivera*, they all render the "C + Collagen" phrase misleading by being void of collagen, they demand a price premium as a result of the misrepresentation, and they are produced, labeled, packaged, and advertised by Gross Skincare.  Doc. 34 at 20.

This conclusion is well supported by previous decisions of other courts in this Circuit.  *See, e.g.*, *Richardson v. Edgewell Pers. Care, LLC*, 653 F. Supp. 3d 67, 75 (S.D.N.Y. 2023) (finding that plaintiff had standing to bring class action claims for twenty different products made by the same defendant, nineteen of which were never purchased by the named plaintiff, because each product was a sunscreen that carried the same misleading label), *vacated and remanded on other grounds*, No. 23-128, 2023 WL 7130940 (2d Cir. Oct. 30, 2023); *Gold v. Eva Nats., Inc.*, 586 F. Supp. 3d 158, 162 (E.D.N.Y. 2022) (holding that plaintiff had standing for twenty-five different skincare products, despite having only purchased one, because each product featured the same branding and thus the nature of the alleged misrepresentations was sufficiently similar).

This case is also in sharp contrast to the situations presented in *DiMuro v. Clinique Laboratories, LLC*, 572 F. App'x 27 (2d Cir. 2014), and *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535 (W.D.N.Y. 2018), upon which Gross Skincare relies.  Doc. 32 at 15.

In *DiMuro*, plaintiffs brought class action false advertising claims arising from the defendants' marketing of a line of cosmetics products.  572 F. App'x at 29.  Their claims encompassed seven different products, only three of which were purchased by the plaintiffs.  *Id.*  The Second Circuit affirmed the district court's holding that the plaintiffs lacked standing to assert claims for the unpurchased products because those products had different ingredients and different advertising claims were made for each.  *Id.*  Because

the products made differing claims, unique evidence would thus be required to prove the falsity of each allegedly misleading advertising claim. *Id*.

Although the Products here do not all contain identical ingredients, this is not determinative when the same alleged misrepresentation is present on both the purchased and unpurchased products, as Kandel alleges. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) ("Although the unpurchased products may contain different ingredients compared to the purchased products, the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products." (internal citation omitted)).  Only a single misrepresentation is alleged by Kandel—that the Products contain collagen.  Doc. 34 at 19–20.  There is thus no need for unique evidence to demonstrate the misleading nature of multiple claims across different Products.

Gross Skincare's reliance on *Holve* is also misplaced.  There, consumers brought a putative class action against the manufacturer of seasoning products, alleging that the manufacturer deceptively marketed as "natural" certain products containing synthetic, artificial, and genetically modified ingredients.  *Holve*, 334 F. Supp. 3d at 542.  The named plaintiff had purchased only one of the products alleged to be deceptively labeled. *Id.* at 547.  Although the court held that the named plaintiff lacked standing to assert claims *on her own behalf* related to the products she did not purchase, *id.* at 547–48, it also held that the named plaintiff did have standing to pursue her claims related to the unpurchased products *on behalf of the putative class* because "the nature and content of the specific misrepresentation alleged regarding the [purchased product] is similar with respect to the unpurchased products," *id.* at 551 (internal quotation marks and citation omitted).  The decision thus supports Kandel's argument.

For these reasons, the fact that Kandel purchased only one of the five Products does not furnish a basis to dismiss her claims as to the other Products.

### D.  Leave to Amend

Kandel has requested leave to amend should her complaint be dismissed in whole or in part.  Doc. 34 at 23.  Rule 15(a)(2) allows a party to amend its pleading with the other party's written consent or the court's leave.  "The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The "permissive standard" of Rule 15 embodies a "strong preference for resolving disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam)).  A request to amend is ultimately within the discretion of the district court judge, who may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Here, the possibility exists that the defects of Kandel's breach of warranty and unjust enrichment claims can be cured.  *See Wiggins*, --- F. Supp. 3d at ---, 2023 WL 7005147, at *18–20 (granting leave to amend after plaintiffs' breach of warranty claims under New York law were dismissed for failing to allege that the defendant was provided with timely notice of the breach and plaintiffs' unjust enrichment claim was dismissed for being duplicative of plaintiffs' other claims).  Therefore, leave to amend the breach of warranty and unjust enrichment claims is GRANTED.

## IV.   CONCLUSION

Gross Skincare's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Kandel's claims for breach of warranty and unjust enrichment on behalf of the Nationwide Class are dismissed without prejudice.  The motion is otherwise denied. Gross Skincare's request for oral argument, Doc. 42, is DENIED as moot.

Kandel may file an amended complaint by March 26, 2024.  If Kandel fails to file an amended complaint by that date, her claims for breach of warranty and unjust enrichment on behalf of the Nationwide Class will be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 30.

It is SO ORDERED.

Dated:    March 5, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.