**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 5786967)
rclarkson@clarksonlawfirm.com
Yana Hart (*pro hac vice*)
yhart@clarksonlawfirm.com
Tiara Avaness (*pro hac vice*)
tavaness@clarksonlawfirm.com
590 Madison Avenue, 21st FLR
New York, NY 10022
Tel: (213) 788-4050
Fax: (213) 788-4070

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMI KANDEL, MOCHA GUNARATNA, and RENEE CAMENFORTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DR. DENNIS GROSS SKINCARE, LLC, a New York Limited Liability Company,<br><br>Defendants. | Case No. 1:23-cv-01967-ER<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Jami Kandel, Mocha Gunaratna, and Renee Camenforte (**"Plaintiffs"**), individually and on behalf of all others similarly situated, by and through their attorneys, bring this class action against Defendant Dr. Dennis Gross Skincare, LLC (**"Defendant"**) for engaging in a perpetual cycle of false advertising of its "C + Collagen" line of products and allege as follows:

## NATURE OF THE ACTION

1.      As the fiercely competitive $300 billion-dollar cosmetics industry explodes,[1] some companies seek to gain a competitive advantage by misleading consumers regarding their products. Defendant, in attempt to differentiate their products from other products on the market, in around 2016 began selling a line of fake collagen cosmetic products that **do not contain any collagen whatsoever.**

2.      This is a class action lawsuit brought on behalf of all purchasers of the Dr. Dennis Gross C + Collagen product line, including C + Collagen Deep Cream, C + Collagen Serum, C + Collagen Mist, C + Collagen Eye Cream, and C + Collagen Mask, and any other products sold with the C+Collagen label, whether sold alone or in combination with other products (collectively, the **"Products"**), sold online and at retail outlets throughout the United States. Plaintiffs seek damages, restitution, and injunctive relief on behalf of a Nationwide Class, a New York Consumer Subclass, and a California Consumer Subclass of consumers who purchased the Products within the states of New York and California. True and accurate representations of some of the Products' front labels are depicted below.

///

///

///

---

[1] FORTUNE BUS. INSIGHTS, *Cosmetics Market Size, Share & COVID-19 Impact Analysis*, BEAUTY & PERSONAL CARE/COSMETICS MARKET: FORTUNE: BUS. INSIGHTS, https://www.fortunebusinessinsights.com/cosmetics-market-102614.

FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 1 (Front Labels):*







FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 2 (Back Labels):*







4

3.     Consumers are deceived by Defendant's uniform labeling and advertising of the Products as "C + Collagen" believing that they are purchasing skincare Products which contain Vitamin C and collagen. In reality, the Products do not contain collagen or collagen amino acids. Instead, they contain vegetable amino acids which are neither collagen nor collagen amino acids.

4.     Consumers rely on Defendant's uniform, bold typeface front label "Collagen" claim under the mistaken belief that the Products contained collagen, when in reality, the Products are entirely devoid of collagen.

5.     Defendant knows that consumers are willing to pay more for collagen, and, in fact, added the word "collagen" to the label to capitalize on consumers' desire of collagen, with the intention that consumers rely on uniform "collagen" claim which prominently appears on every label, advertisement, communication with the consumers.

6.     Defendant does not advise its consumers that its products are entirely devoid of collagen.

7.     In fact, consumers are not typically sophisticated in chemistry to know that Defendant's products are devoid of collagen. Even if consumers review nearly every side of the product packaging, they are reassured that the Products contain collagen (or at the very minimum collagen amino acids sourced from collagen).

///

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 3 (Side Labels):*







///

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 4 (Side Labels):*






FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 5 (Side Labels):*






///

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 6 (Side Labels):*



8.      Defendant's claims are false, misleading, deceptive, unfair, fraudulent, and unlawful under Sections 349 and 350 of New York's General Business Law ("**GBL**"); in breach of Defendant's express and implied warranties; and resulting in Defendant's unjust enrichment.

9.      Defendant's false and deceptive claims are uniformly advertised through its front label, packaging, website, and other media, in violation of consumer laws.

FIRST AMENDED CLASS ACTION COMPLAINT

10.     Through its false, misleading, and deceptive advertising, Defendant has duped thousands or more consumers into buying the Products at stores across New York, and the nation, based on its material claims that the Products contain collagen.

11.     Plaintiffs and members of the Nationwide Class and the New York Consumer Subclass purchased the Products in reliance on Defendant's material misrepresentations. They would not have purchased the Products had they known the claims as described herein were false, deceptive, and misleading.

## PARTIES

12.     **Plaintiff Jami Kandel** is, and at all times relevant hereto was, a citizen of New York residing in Brooklyn. Plaintiff Kandel purchased the C + Collagen Serum Product at a Sephora store located on Broadway Street in New York in the Spring/Summer of 2022 for approximately $78.

13.     **Plaintiff Mocha Gunaratna** is, and at all times relevant hereto was, a citizen of California residing in the County of Los Angeles. Plaintiff Gunaratna purchased the C + Collagen Deep Cream and C + Collagen Serum Products at a Sephora store located at The Grove in Los Angeles, California in 2018 for approximately $75 each.

14.     **Plaintiff Renee Camenforte** is, and at all times relevant hereto was, a citizen of California residing in the County of Los Angeles. Plaintiff Camenforte purchased the C + Collagen Mist on the Dr. Dennis Gross Skincare website in 2020 for approximately $30.

15.     In making their purchase decision, Plaintiffs relied upon Defendant's labeling, packaging, and advertising claims, including the bold typeface front label "Collagen" claim under reasonable belief that the Product contained collagen (as well as vitamin C). Plaintiffs were

FIRST AMENDED CLASS ACTION COMPLAINT

unaware that the Product was entirely devoid of collagen, and as a result, Plaintiffs lost money in the form of the price premium they paid for Product which falsely claims to contain collagen.

16.     Defendant and its agents prepared, approved, and disseminated the Products' labeling and advertising nationwide. Defendant designed the Products' labels to entice consumers who sought to purchase products containing collagen. If Plaintiffs had known that the Product did not contain collagen, they would not have purchased the Product, let alone paid a "premium" for such a valued benefit. Plaintiffs could have purchased a different product, and instead, they purchased "C + Collagen," reasonably interpreting the label to convey that the Product contains both, vitamin C and collagen.

17.     Plaintiffs are entirely unaware of any product in the marketplace that would use the "+" for anything other than "and." Plaintiffs are unaware of any advertisement from Defendant in which Defendant advises consumers that the Products do not contain any collagen, or that the label is intended to mean something other than prominently listing the ingredients – Vitamin C and Collagen.

18.     Plaintiffs desired to purchase a product which contain real collagen, and were duped by Defendant's false and misleading advertisement, which affects consumers and competition.

19.     **Defendant Dr. Dennis Gross Skincare, LLC** is a limited liability company headquartered in New York. Dr. Dennis Gross Skincare, LLC maintains its principal business office at 444 Madison Ave. Suite 500, New York, NY 10022. Dr. Dennis Gross Skincare, LLC, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New York. Dr. Dennis Gross Skincare, LLC is an owner, manufacturer, seller, and/or distributor of the Dennis Gross C + Collagen product line and is a

FIRST AMENDED CLASS ACTION COMPLAINT

company that created and/or authorized the false, misleading, and deceptive labeling and packaging for the Products.

20.     Defendant selected the "C + Collagen" names because it believed this name would sell and entice consumers to purchase the Products.

21.     Defendant was aware that consumers tend to value and purchase products which contain collagen representations.

22.     Defendant, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that the claims about the Products and, in particular, the claims suggesting and/or outright stating that the Products contain collagen are false, deceptive, and misleading. Defendant affirmatively misrepresented the contents and benefits of the Products in order to convince the public and the Products' users to purchase and use the Products, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

**JURISDICTION AND VENUE**

23.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

24.     Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff Kandel is a citizen of New York and purchased the Product within this District. Moreover, Defendant receives substantial compensation from sales in this

FIRST AMENDED CLASS ACTION COMPLAINT

District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, label, packaging, and Internet advertisements, among other advertising.

25. Defendant is subject to personal jurisdiction in New York because Defendant is headquartered in New York, and all of its business operations, including related to the sale, distribution, and marketing of the "C + Collagen" line of products, stem from New York.

## FACTUAL ALLEGATIONS

26. Collagen is the single most abundant protein found in the cartilage, bone, and tissues of animals, fish, and humans.[2] It is a major insoluble fibrous protein in the extracellular matrix and connective tissue.[3] It is found in tendons and ligaments, as well as the cornea, cartilage, bones, gut, blood vessels and intervertebral discs.[4] Collagen is not found in plants.[5]

27. Collagen has been linked to youthful skin, hair, and nails.[6] As a result, sales of collagen anti-aging products in the United States are booming as consumers look to improve their

---

[2] Ananya Mandal, MD., *What is Collagen*, NEWS MED LIFE SCIS., https://www.news-medical.net/health/What-is-Collagen.aspx ("In nature, collagen is found exclusively in animals, especially in the flesh and connective tissues of mammals."); INTERNATIONAL FOOD RESEARCH JOURNAL 22(1), Hashim, P., Ridzwan, M. M. S., Bakar, J., & Hashim, M. D., *Collagen in food and beverage industries*, (2015); EC NUTRITION, Raman, M., & Gopakumar, K., *Fish collagen and its applications in food and pharmaceutical*, (2018) ("Collagen is the most abundant and ubiquitous protein in animal origin, which comprising approximately 30% of total protein. Collagen is mainly presents in all connective tissues, including animal skin, bone, cartilage, tendon and blood vessels.").

[3] *Id.*

[4] *Id.*

[5] Jane B. Reece, Noel Myers, & Lisa A. Urry, Campbell Biology 688 (Australian and New Zealand ed. 2015) ("The most abundant of these proteins is collagen, which is not found in plants or fungi."); J.E. MURRAY ET AL., PHARMACOGNOSY: FUNDAMENTALS, APPLICATIONS, AND STRATEGY 477- 494 (Simone Badal & Rupika Delgoda eds., 2017) (stating that fibrous proteins, including collagens, are not found in differentiated plants).

[6] *See generally*, Sally Wadyka, The Real Deal on Collagen: *Can Popping a Pill or Eating Foods with Collagen Improve your Skin, Hair, Nails, or Joints?* CR: CONSUMER REPORTS (Oct. 13, 2020), https://www.consumerreports.org/supplements/the-real-deal-on-collagen/; see also Yola Robert, *Here's Why Wellness Brands Are Investing Into Collagen*, FORBES (Nov. 15, 2021, 6:41 PM), https://www.forbes.com/sites/yolarobert1/2021/11/15/heres-why-wellness-brandsare-

---

FIRST AMENDED CLASS ACTION COMPLAINT

skin, hair, and nails.[7] In fact, the United States collagen market is expected to double in size over the next decade with much of that growth coming from cosmetics.[8]

28.    Honest collagen cosmetic manufacturers sell products that actually contain collagen, while honest amino acid cosmetic manufacturers are careful not to deceptively label their products as containing collagen. The latter otherwise label and advertise their products as containing "amino acids," "peptides," or "boosters." Truth in advertising and labeling of collagen cosmetics is critical to ensuring fair competition and a properly functioning marketplace.

29.    Consumers seek products containing collagen for the *perceived* benefits including but not limited to antiaging, moisturizing, and wrinkle reduction. Consumers prefer skincare products which contain collagen over other non-collagen products.

30.    Defendant uniformly and consistently labels and advertises the Products as containing "C + Collagen" – meaning they contain Vitamin C and Collagen. While the Products contain Vitamin C, **the Products contain zero collagen**.

31.     Defendant lists purported "Collagen Amino Acids" as an ingredient in the Products. However, amino acids are just the building blocks of proteins in the human body, of which collagen is but one example. Amino acids are as different from collagen as random pile of screws, bolts, and metal to a Rolls Royce. If amino acids are like letters in the alphabet, collagen is akin to Shakespeare's play "Hamlet."

32.    Collagen is a molecule containing thousands of amino acids, intertwined in a specific order, requiring proper arrangement, assembly, under specific conditions, while amino

---

investing-into-collagen/?sh=29a438223a13 (noting that the "global collagen market was at an estimated $3.5 billion in 2018 and jumped to $8.36 billion in 2020 with anticipated growth to $16.70 billion by 2028")
[7] *Id.*
[8] *Id*.

FIRST AMENDED CLASS ACTION COMPLAINT

acids are significantly less complex molecules that do not have the same structure, function, or benefits of collagen.[9]

*Figure 7:*



33.    Defendant's Products do not contain any collagen or amino acids sourced from collagen because the Products are vegan and thus, cannot be composed of or contain collagen or "collagen" amino acids because collagen is sourced exclusively from animals. **Plants do not and cannot produce collagen.[10]** In fact, plants do not contain the specific amino acid profiles, and are not rich in glycine, proline, and hydroxyproline, which are abundant within collagen molecules.[11]

---

[9] BCCAMPUS, *Concepts of Biology*, Chapter 2.3 Biological Molecules, (available at https://opentextbc.ca/biology/chapter 2-3-biological-molecules (explaining the difference between amino acids and proteins).

[10] Jane B. Reece, Noel Myers, & Lisa A. Urry, Campbell Biology 688 (Australian and New Zealand ed. 2015) ("The most abundant of these proteins is collagen, which is not found in plants or fungi."); J.E. MURRAY ET AL., PHARMACOGNOSY: FUNDAMENTALS, APPLICATIONS, AND STRATEGY 477- 494 (Simone Badal & Rupika Delgoda eds., 2017) (stating that fibrous proteins, including collagens, are not found in differentiated plants).

[11] Katarzyna Pytkowska, *Hydrolysed Proteins in Cosmetic Productions, Part II*, RESEARCH GATE, https://www.researchgate.net/ profile/Katarzyna-Pytkowska (depicting within table 1 amino composition of plant proteins, which is significantly different from the amino acid composition derived from hydrolyzed collagen, depicted within table 2" [hydroxyproline 10.6, proline 12.9, glycine 28.5].); Gorissen, Stefan H. M., et al., *Protein Content and Amino Acid Composition of Commercially Available Plant-Based Protein Isolates - Amino Acids* SPRINGERLINK, 30 Aug. 2018 https://link.springer.come/article/10.1007/s00726-018-2640-5.

FIRST AMENDED CLASS ACTION COMPLAINT

34.     Even if hydrolyzed (meaning broken down in smaller particles), collagen contains rich and specific combinations of amino acids which are not and cannot be naturally sourced from plants.

35.     Defendant's false labeling and advertising leads consumers to reasonably believe they are purchasing a product which contains collagen, and that this product is better than any other vitamin C product on the market because it also contains collagen. Consumers rely on Defendant's false and misleading label conveying that the Products contain collagen, and purchasing the Products in reliance on Defendant's false and misleading prominent "C + Collagen" front label.

36.     Defendant has made, and continues to make these false, deceptive, misleading, unfair, fraudulent, and unlawful claims and promises to consumers about the presence of collagen in the Products. In fact, Defendant marketed its C + Collagen Serum on the Times Square signage uniformly exposing potential consumers to its prominent C + Collagen label, despite the fact that the Products are entirely devoid of collagen.

///

///

///

///

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 8:*



37.     Plaintiffs and the Class purchased the Products in reliance upon the challenged "Collagen" label and advertising claims.

38.     Plaintiffs and the Class would not have purchased the Products had they known the Products did not contain collagen.

39.     Plaintiffs believe that the market price for the Products would have been different had Defendant honestly advertised the Products as containing only Vitamin C.

FIRST AMENDED CLASS ACTION COMPLAINT

40.    Defendant's conduct threatens nationwide and New York consumers by disseminating deceptive and misleading advertising of the Products. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition has a negative impact on the marketplace and reduces consumer choice.

41.    Upon information and belief, Plaintiffs allege that during the course of the deception Defendant has sold thousands of units of the Products based upon the false and deceptive labels.

42.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs and the Class would not have purchased the Products if they had known that the labeling as described herein was false.

43.    Plaintiffs make the allegations herein upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NO ADEQUATE REMEDY AT LAW

44.    Defendant's false and misleading statements should be enjoined due to the false, misleading, and/or deceptive nature of Defendant's false, deceptive, misleading, unfair, fraudulent, and unlawful claims that the Products contain collagen. In addition, Defendant should be compelled to provide restitutionary damages to consumers in an amount to be determined at trial.

45.    Plaintiffs and members of both the Nationwide Class and the New York Consumer Subclass are entitled to equitable relief, as no adequate remedy at law exists.

a.    **Broader Limitations Period.** The statutes of limitations for the causes of action pled herein vary. The limitations period for unjust enrichment claims is six years, which is three years longer than the statutes of limitations under GBL § 349 and

GBL § 350. If Plaintiffs' claims for equitable relief are not allowed to proceed, members of both Classes who purchased the Products more than three years before the filing of this complaint may be barred from any form of financial recovery.

b. **Broader Scope of Conduct.** The scope of actionable misconduct is broader under unjust enrichment/restitution than the other causes of action pled herein.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and members of both Classes because Defendant continues to fraudulently misrepresent the Products as containing "collagen." Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' "collagen" representation is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by Defendant's future

FIRST AMENDED CLASS ACTION COMPLAINT

harm, because discovery and Plaintiffs' investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified the Class, the following remains unknown: the scope of the Classes, the identities of its members, their respective purchasing practices, prices of past/future Products sales, and quantities of past/future Products sales.

d. **Procedural Posture—Incomplete Discovery and Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No nationwide or New York class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class. Plaintiffs therefore reserve the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiffs and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

46. Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. Plaintiffs seek to represent a class consisting of "All persons who purchased the Products in the United States, for personal use and not for resale from March 10, 2016, through the present (the **"Nationwide Class"**).

FIRST AMENDED CLASS ACTION COMPLAINT

47.     Plaintiff Kandel also seeks to represent a New York Consumer Subclass defined as: "All persons who purchased the Products in the State of New York, for personal use and not for resale from March 10, 2016, through the present (the **"New York Consumer Subclass"**). Said definitions may be further defined or amended by additional pleadings, hearings, and orders of this Court.

48.     Plaintiffs Gunaratna and Camenforte also seek to represent a California Consumer Subclass defined as: "All persons who purchased the Products in the State of California, for personal use and not for resale from March 10, 2016, through the present (the **"California Consumer Subclass"**). Said definitions may be further defined or amended by additional pleadings, hearings, and orders of this Court.

49.     Excluded from the Nationwide Class, the New York Consumer Subclass, and the California Consumer Subclass are Defendant's officers, directors, and employees, and any individual who received remunerations from Defendant in connection with that individual's use or endorsement of the Products.

50.     The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands throughout the United States and the state of New York. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

51.     Common questions of fact and law predominate over questions which may affect individual class members, including the following:

    a.     Whether Defendant's product contains collagen;

FIRST AMENDED CLASS ACTION COMPLAINT

b.  Whether consumers believe Defendant's product labels to convey that the Products contain vitamin c and collagen;

c.  Whether Defendant's conduct violates New York General Business Law Section 349, *et seq.*;

d.  Whether Defendant's conduct violates New York General Business Code Section 350, *et seq.*;

e.  Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice in violation of California Civil Code Section 1750, *et seq.*;

f.  Whether Defendant used deceptive representations in connection with the sale of the Products in violation of California Civil Code Section 1750, *et seq.*;

g.  Whether Defendant represented the Products have characteristics that they do not have in violation of California Civil Code Section 1750, *et seq.*;

h.  Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of California Civil Code Section 1750, *et seq.*;

i.  Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code Section 17500, *et seq.*;

j.  Whether Defendant knew or by the exercise of reasonable care should have known its advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

k.  Whether Defendant made false and misleading representations in its advertising and labeling of the Products in violation of Business and Professions Code Section 17500, *et seq.*;

FIRST AMENDED CLASS ACTION COMPLAINT

l.   Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

m.   Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

n.   Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

o.   Whether Defendant's conduct constitutes a breach of express warranty;

p.   Whether Defendant's conduct constitutes a breach of implied warranty;

q.   Whether Defendant's conduct constitutes a violation of the Magnuson-Moss Warranty Act written warranty provision within the meaning  of 15 USC Section 2301, *et seq.*;

r.   Whether Defendant's conduct constitutes a violation of the Magnuson-Moss Warranty Act implied warranty of merchantability provision within the meaning of 15 USC Section 2301, *et seq.*;

s.   Whether Defendant was unjustly enriched by its deceptive conduct;

t.   Whether Plaintiffs and the Class paid more money or a premium amount for the Products than they actually received; and

u.   How much more money or premium amount Plaintiffs and the Class paid for the Products than they actually received.

52.    Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

FIRST AMENDED CLASS ACTION COMPLAINT

53.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions. Plaintiffs and the Class purchased the Products under the false belief that the Products contained collagen. Plaintiffs and the Class relied upon Defendant's labeling, packaging, and advertising claims and would not have purchased the Products if they had known that the Products did not contain collagen.

54.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

55.    The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

56.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

57.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

FIRST AMENDED CLASS ACTION COMPLAINT

58.    On May 23, 2019 written notice was sent to Defendant via certified U.S. mail and on July 27, 2020 written notice was sent to Defendant via electronic mail pursuant to Civil Code Section 1750, *et seq.*, which set forth the claims of the Class concerning the Products' false, misleading, deceptive, unlawful, unfair, and fraudulent claims.

**COUNT ONE**

**Violation of New York General Business Law,**

**New York General Business Law § 349, *et seq.***

**And Similar Statutes in Other States**

***(brought on behalf of Plaintiff Kandel and the New York Consumer Subclass)***

59.    Plaintiff Kandel repeats and realleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

60.    Plaintiff brings this cause of action pursuant to Section 349, *et seq.*, New York General Business Law ("GBL"), on her own behalf and on behalf of all other persons similarly situated of the proposed New York Consumer Subclass against Defendant.

61.    The New York Consumer Subclass consists of thousands of persons, the joinder of whom is impracticable.

62.    There are questions of law and fact common to the New York Consumer Subclass, which questions are substantially similar and predominate over questions affecting the individual class members, as set forth hereinabove.

63.    New York's General Business Code section 349, *et seq.*, declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any services in this state."

FIRST AMENDED CLASS ACTION COMPLAINT

64.     The conduct of Defendant alleged herein constitutes recurring "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and members of the New York Consumer Subclass seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

65.     There is no adequate remedy at law.

66.     Defendant misleadingly, inaccurately, and deceptively labels and advertises its Products to consumers.

67.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product as "C+ Collagen", when in fact the Products are devoid of collagen—is misleading in a material way in that it, *inter alia*, induced Plaintiff and members of the New York Consumer Subclass to purchase and pay a premium for the Products. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

68.     Defendant's labeling and advertising of the Products induced Plaintiff and members of the New York Consumer Subclass to buy Defendant's Products and to pay a premium price for them. Specifically, Plaintiff and members of the New York Consumer Subclass reasonably relied on the material and false "collagen" claim to their detriment in that they purchased the Products and paid a premium price for them.

69.     Plaintiff and members of the New York Consumer Subclass have been injured inasmuch as they paid a premium for Products that—contrary to a reasonable interpretation of Defendant's labeling—do not contain any collagen whatsoever. Accordingly, Plaintiff and

FIRST AMENDED CLASS ACTION COMPLAINT

members of the New York Consumer Subclass received less than what they bargained and/or paid for.

70.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and members of the New York Consumer Subclass have been damaged thereby.

71.     All of the consumer-oriented conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice, and/or generalized course of conduct.

72.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. Plaintiff and members of the New York Consumer Subclass seek actual damages of $50 for Defendant's violation of this Section. Plaintiff and the Class seek actual damages of $1,000 for Defendant's willful violation of this Section.

## COUNT TWO

**Violation of New York General Business Law,**

**New York General Business Law § 350, *et seq.***

**And Similar Statutes in Other States**

*(brought on behalf of Plaintiff Kandel and the New York Consumer Subclass)*

73.     Plaintiff Kandel repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

FIRST AMENDED CLASS ACTION COMPLAINT

74.     Plaintiff brings this cause of action pursuant to Section 350, *et seq.*, New York General Business Law, on her own behalf and on behalf of all other persons similarly situated of the proposed New York Consumer Subclass against Defendant.

75.     Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows: The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

76.     Defendant's labeling and advertising contain untrue and materially misleading statements concerning the Products inasmuch as they misrepresent and create the net impression that the Products contains "collagen" when in reality, the Products contain no collagen whatsoever.

77.     The "collagen" misrepresentation is material because consumers seek collagen skincare products for its benefits for the skin and the misrepresentation is likely to mislead reasonable consumers into purchasing the Products.

78.     In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading inasmuch as the labels convey the net impression that the Products contain Vitamin C and Collagen.

FIRST AMENDED CLASS ACTION COMPLAINT

79. Defendant's collagen representations were specifically designed to induce reasonable consumers, like Plaintiff and members of the New York Consumer Subclass, to purchase the Products.

80. Plaintiff and members of the New York Consumer Subclass have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Product which—contrary to Defendant's labeling and representations—did not contain any collagen. Accordingly, Plaintiff and members of the New York Consumer Subclass received less than what they bargained and/or paid for.

81. Defendant's labeling, advertising, and packaging of the Products induced Plaintiff and members of the New York Consumer Subclass to buy Defendant's Products.

82. Defendant violated GBL § 350 when it labeled and advertised the Products in an unfair, deceptive, untrue, and materially misleading way and disseminated these misrepresentations to the public through the Products' labeling, packaging, and advertising.

83. Defendant's consumer-oriented conduct as alleged herein constitutes recurring, unlawful false advertising in violation of N.Y. GBL § 350.

84. New York and Congress, by and through the Federal Trade Commission ("FTC"), have recognized consumers' rights to truth in advertising by prohibiting manufacturers, marketers, and sellers from making material misrepresentations that are likely to mislead to the reasonable or ordinary consumer. *See*, *e.g.*, New York Gen. Bus. Law § 350, *et seq.*; 15 U.S.C. § 45 (Federal Trade Commission Act).

85. As a direct and proximate result of Defendant's misconduct, Plaintiff and members of the New York Consumer Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because

the Products they purchased were different than what Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the presence of "collagen" within the Products. Accordingly, on behalf of Plaintiff and the members of the New York Consumer Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act,

### California Civil Code 1750, *et seq.*

### *(brought on behalf of Plaintiffs Gunaratna and Camenforte and the California Consumer Subclass)*

86.    Plaintiffs Gunaratna and Camenforte repeat and reallege the allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

Plaintiffs bring this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("**CLRA**"), on her own behalf and on behalf of all other persons similarly situated. Plaintiffs seek to represent a Class consisting of "All persons who purchased the Products in the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the date of court order approving or granting class certification." Excluded from the Class are Defendant's officers, directors, and employees, and any indidual who received remunerations from Defendant in connection with that individual's use or endorsement of the Products.

///

///

30

FIRST AMENDED CLASS ACTION COMPLAINT

87.    The Class consists of thousands of persons, the joinder of whom is impracticable.

88.    There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, as set forth hereinabove.

89.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

90.    The policies, acts, and practices described herein were intended to result in the sale of the Products to the consuming public, and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Products; and (2) advertising, labeling, and packaging the Products with intent not to sell them as advertised.

91.    Defendant fraudulently deceived Plaintiffs and the Class by misrepresenting the Products as having characteristics which they do not have, e.g., labeling and advertising the Products as containing collagen. In doing so, Defendant misrepresented and concealed material facts from Plaintiffs and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

92.    Defendant fraudulently deceived Plaintiffs and the Class by labeling and advertising the Products with intent not to sell them as advertised. Specifically, Defendant labeled and misrepresented the Products as containing collagen. In doing so, Defendant misrepresented and concealed material facts from Plaintiffs and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

93.    Defendant knew or should have known, through the exercise of reasonable care, that the Products' labeling and advertising were misleading.

94.    Defendant's actions as described herein were done with conscious disregard of Plaintiffs' rights, and Defendant was wanton and malicious in its concealment of the same.

95.    Defendant's labeling and advertising of the Products were material factors in Plaintiffs' and the Class's decisions to purchase the Products. Based on Defendant's labeling and advertising of the Products, Plaintiffs and the Class reasonably believed that they were purchasing Products that contained collagen. Had they known the truth of the matter, that the Products did not actually contain collagen, Plaintiffs and the Class would not have purchased the Products.

96.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiffs paid for Products that she believed contained collagen. In reality, the Products did not contain collagen. Plaintiffs and the Class would not have purchased the Products had they known the claims were false.

97.    Defendant's false and misleading labeling and advertising should be enjoined due to its false, misleading and/or deceptive nature.

98.    By letter dated May 23, 2019, and July 27, 2020, Plaintiffs advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

99.    Plaintiffs seek restitutionary relief.

## COUNT FOUR

**Violation of California False Advertising Law,**

**Business & Professions Code 17500, *et seq*.**

*(brought on behalf of Plaintiffs Gunaratna and Camenforte and the California Consumer*

*Subclass)*

100.    Plaintiffs Gunaratna and Camenforte repeat and reallege the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

FIRST AMENDED CLASS ACTION COMPLAINT

101.    Plaintiffs bring this cause of action pursuant to Business and Professions Code Section 17500, *et seq*., on their own behalf and on behalf of all other persons similarly situated. Plaintiffs seek to represent a Class consisting of "All persons who purchased the Products in the State of California, for personal use and not for resale during the time period of four years through the date of court order approving or granting class certification." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products.

102.    California's False Advertising Law, California Business and Profession Code Section 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

103.    Defendant knowingly spread misleading claims regarding the Products as a means to mislead the public about the actual ingredients in the Products.

104.    Defendant controlled the labeling, packaging, production, and advertising of the Products. Defendant knew or should have known, through the exercise of reasonable care, that its representations and omissions about the ingredients of the Products were untrue, deceptive, and misleading.

FIRST AMENDED CLASS ACTION COMPLAINT

105.    Defendant's actions of advertising and displaying misleading claims and falsely labeling the Products "C + Collagen" in prominent type face on each Product label are likely to deceive consumers into believing the Products contain collagen.

106.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

107.    Pursuant to Business & Professions Code Section 17535, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of falsely advertising that the Products contain collagen. Likewise, Plaintiffs and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant in amount to be determined by trial.

108.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs and the Class purchased the Products in reliance upon the claims by Defendant that the Products contained collagen. Plaintiffs would not have purchased the Products if she had known that the claims and advertising as described herein were false.

## COUNT FIVE

**Violation of California Unfair Competition Law,**

**Business & Professions Code Section 17200, *et seq.***

***(brought on behalf of Plaintiffs Gunaratna and Camenforte and the California Consumer Subclass)***

109.    Plaintiffs Gunaratna and Camenforte repeat and reallege the allegations set forth above, and incorporate the same as if set forth herein at length.

FIRST AMENDED CLASS ACTION COMPLAINT

110.    Plaintiffs bring this cause of action pursuant to Business and Professions Code Section 17200, *et seq.*, on their own behalf and on behalf of all other persons similarly situated. Plaintiffs seek to represent a Class consisting of "All persons who purchased the Products in the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the date of court order approving or granting class certification." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products.

111.    In its labeling and advertising of the Products, Defendant misleads consumers into believing the Products contain collagen.

112.    Defendant's advertising claims and omissions about the Products are false, deceptive, misleading, and unreasonable.

113.    The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.  "Unfair" Prong

114.    Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.,* a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

115.    Defendant's action of advertising and labeling the Products as containing collagen is false.

116.    Defendant's action of false advertising of its Products' status causes injuries to consumers, who do not receive what they were promised.

FIRST AMENDED CLASS ACTION COMPLAINT

117.     Defendant's false and deceptive claims that the Products contain collagen stifles competition in the marketplace.

118.     Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

119.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. In doing so, the courts "weigh the utility of the Defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F. 3d 1152, 1169 (9th Cir. 2012).

120.     Here, Defendant's conduct of advertising its Products as containing collagen when they do not results in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

121.     Some courts hold that the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

122.     Defendant's labeling and advertising of the Products as containing collagen is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

123.     Defendant knew or should have known of its unfair conduct.

124.     As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

125.     There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the presence of collagen in the Products.

FIRST AMENDED CLASS ACTION COMPLAINT

126.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

127.    Pursuant to Business & Professions Code Section 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and labeling of the Products.  Likewise, Plaintiffs and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

128.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiffs and the Class paid an unwarranted premium for the Products. Plaintiffs and the Class would not have purchased the Products had they known that the Products lacked actual collagen.

### B. "Fraudulent" Prong

129.    California Business and Profession Code Section 17200, *et seq*. considers conduct fraudulent and prohibits said conduct if it is likely deceive members of the public. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 553 (1992).

130.    Defendant's conduct of advertising false claims about the presence of collagen in the Products is likely to deceive members of the public.

131.     Defendant's advertising and labeling of the Products as containing collagen is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

132.    Defendant knew or should have known of its fraudulent conduct.

FIRST AMENDED CLASS ACTION COMPLAINT

133.    As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

134.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the presence of collagen in the Products.

135.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

136.    Pursuant to Business & Professions Code Section 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.  Likewise, Plaintiffs and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

137.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiffs and the Class paid an unwarranted premium for the Products. Plaintiffs and the Class would not have purchased the Products if they had known that the Products did not contain collagen.

### C. "Unlawful" Prong

138.    California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes

FIRST AMENDED CLASS ACTION COMPLAINT

independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

139.    Defendant's advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.,* California Business and Professions Code Section 17500, *et seq.*

140.    Defendant's packaging, labeling, and advertising of the Products as containing collagen are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

141.    Defendant knew or should have known of its unlawful conduct.

142.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

143.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have truthfully labeled and advertised the Products.

144.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

145.    Pursuant to Business and Professions Code Section 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiffs and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

FIRST AMENDED CLASS ACTION COMPLAINT

146.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs and the Class paid an unwarranted premium for the Products. Plaintiffs and the Class would not have purchased the Products if they had known that Defendant deceived consumers into believing the Products contained collagen.

## COUNT SIX

### Breach of Express Warranty

### *(brought on behalf of the Nationwide Class)*

147.    Plaintiffs repeat and reallege the allegations of the previous paragraphs and incorporate the same as if set forth herein at length.

148.    Defendant expressly warrants that the Products contain collagen, as set forth above. Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiffs placed importance on Defendant's claims.

149.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Nationwide Class.

150.    Defendant breached the terms of the contract, including the express warranties, with Plaintiffs and the Nationwide Class by not providing Products that conform to the advertising and label claims.

151.    On May 23, 2019, written notice was sent to Defendant via certified U.S. mail and on July 27, 2020, written notice was sent to Defendant via electronic mail, setting forth the claims of the Class concerning the Products' false, misleading, deceptive, unlawful, unfair, and fraudulent claims. *See supra* ¶ 58.

FIRST AMENDED CLASS ACTION COMPLAINT

152.    As a result of Defendant's breach of contract, Plaintiffs and the Nationwide Class have been damaged in the amount to be determined at trial.

## COUNT SEVEN

### Breach of Implied Warranty

*(brought on behalf of the Nationwide Class)*

153.    Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

154.    Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

155.    Defendant is a merchant with respect to the Products, as it manufactures, distributes, and sells the Products nationwide.

156.    In order to be merchantable, goods must conform to the promises or affirmations of fact made on the container or labeling.

157.    Defendant breached the implied warranty of merchantability to Plaintiff and the Nationwide Class in that the labels of the Products promised and affirmed that the Products contain collagen. Contrary to the promise and affirmation of fact, the Products do not contain collagen.

158.    As a result of Defendant's conduct, Plaintiffs and the Nationwide Class did not receive merchantable goods as impliedly warranted by Defendant.

159.    Defendant did not exclude or modify the Products' implied warranty of merchantability.

160.    As a proximate result of Defendant's breach of its implied warranty, Plaintiffs and members of the Nationwide Class incurred damages. Plaintiffs and members of the Nationwide Class were damaged as a result of Defendant's failure to comply with its obligations under the

FIRST AMENDED CLASS ACTION COMPLAINT

implied warranty, since Plaintiffs and members of the Nationwide Class paid for Products that did not have the promised quality and nature, did not receive the collagen that they bargained for, paid a premium for the Products when they could have instead purchased other less expensive alternative products, and lost the opportunity to purchase other, true collagen products.

161.    On May 23, 2019 written notice was sent to Defendant via certified U.S. mail and on July 27, 2020 written notice was sent to Defendant via electronic mail, setting forth the claims of the Class concerning the Products' false, misleading, deceptive, unlawful, unfair, and fraudulent claims. *See supra* ¶ 58.

162.    Plaintiffs and members of the Nationwide Class are therefore entitled to recover all available remedies for said breach.

## COUNT EIGHT

### Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*

### Violation of Written Warranty

### *(brought on behalf of the Nationwide Class)*

163.    Plaintiffs repeat and reallege the allegations set forth above, and incorporate the same as if set forth herein at length.

164.    The MMWA, 15 U.S.C. §§ 2301, *et seq.*, creates a private cause of action for breach of "written warranty" as defined by that Act. 15 U.S.C. § 2301(6) and § 23 10(d)(l).

165.    The Products are "consumer products" as defined in 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

166.    Plaintiffs and Class members are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Products for purposes other than resale.

FIRST AMENDED CLASS ACTION COMPLAINT

167.    Defendant is an entity engaged in the business of making the Products available, either directly or indirectly, to consumers such as Plaintiffs and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

168.    Through its labeling, Defendant gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in the Products. As a result, Defendant is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

169.    Defendant provided a "written warranty" within the meaning of 15 U.S.C. § 2301(6) for the Products by prominently affirming and promising in writing on the labeling of the Products that they contain collagen. This affirmation of fact regarding the nature and quality of the Products constituted, and was intended to convey to purchasers, a written promise that the Products contain collagen as labeled. As such, this written promise and affirmation was part of the basis of Plaintiffs' and Class members' bargains with Defendant in purchasing the Products.

170.    Defendant breached the written warranty to Plaintiffs and the Class by failing to provide and supply Products that contain collagen. Since the Products do not have the requisite qualities and character promised by Defendant's written warranty, the Products did not comply with Defendant's obligations under the written warranty to supply "Collagen" labeled Products to Plaintiffs and the Class.

171.    Plaintiffs provided Defendant notice of, and a reasonable opportunity to cure, the defects in the Products and remedy the harm to Plaintiffs and the Class. Defendant failed to take corrective action.

172.    Plaintiffs and Class members were injured by Defendant's failure to comply with its obligations under the written warranty, since Plaintiffs and Class members paid for Products that did not have the promised qualities and nature, did not receive Products that contained

FIRST AMENDED CLASS ACTION COMPLAINT

collagen. They accordingly paid a premium for the Products when they could have instead purchased other less expensive alternatives, and lost the opportunity to purchase other products that truly contain collagen.

173.    Plaintiffs and the Class therefore seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

## COUNT NINE

**Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.***

**Violation of Implied Warranty of Merchantability Under State Law**

*(brought on behalf of the Nationwide Class)*

174.    Plaintiffs repeat and reallege the allegations set forth above, and incorporate the same as if set forth herein at length.

175.    The MMWA creates a federal cause of action for breach of an implied warranty of merchantability. 15 U.S.C. § 2310(d)(1). Unlike a "written warranty," the term "implied warranty" under the MMWA is defined by reference to state law. 15 U.S.C. § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.") Thus, the MMWA creates a federal cause of action for breach of an implied warranty of merchantability arising under state law.

176.    The elements of the breach of implied warranty of merchantability claim are met as described fully in Plaintiffs' Seventh Cause of Action, ¶¶ 153-162. *Supra*.

177.    Additionally, the remaining requirements of the MMWA are met.

178.    The Products each are a "consumer product" as defined in 15 U.S.C. § 2301(1), as

they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

179.    Plaintiffs and the members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Products for purposes other than resale.

180.    Defendant is an entity engaged in the business of making the Products available, either directly or indirectly, to consumers such as Plaintiffs and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

181.    Defendant knew of, and caused, the Products to state "Collagen" on their labels. This statement created an implied warranty of merchantability under state law in connection with the sales of the Products to Plaintiffs and the Class. As such, Defendant was obligated under an implied warranty of merchantability, and, accordingly, Defendant is a "warrantor" as that term is defined at 15 U.S.C. § 2301(5).

182.    Defendant was provided notice and a reasonable opportunity to cure the defects in the Products and remedy the harm to Plaintiffs and the Class, but failed to do so, as set forth above.

183.    Plaintiffs and the Class therefore seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time as provided in 15 U.S.C. § 2310(d) and as available under state law.

## COUNT TEN

### Restitution Based on Quasi-Contract/Unjust Enrichment

### *(brought on behalf of the Nationwide Class)*

184.    Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

FIRST AMENDED CLASS ACTION COMPLAINT

185.    Plaintiffs bring this claim for unjust enrichment on behalf of the Nationwide Class in the alternative.

186.    Defendant's conduct in enticing Plaintiffs and members of the Nationwide Class to purchase the Products through the use of falsely and misleading labeling the Products "Collagen" as described herein is unlawful because the "Collagen" statements contained on the Products' labels are untrue. Defendant took monies from Plaintiffs and the Class for Products that did not contain collagen. Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Nationwide Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.

187.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Nationwide Class are entitled to restitution in an amount to be proved at trial.

188.    Plaintiffs' claim for unjust enrichment is not duplicative of claims under N.Y. Gen. Bus. Law §§ 349 and 350 because the scope of conduct prohibited is broader, and its elements are distinct from the elements for claims under N.Y. Gen. Bus. Law §§ 349 and 350.[12] Unjust enrichment further differs because it evaluates remedies from the perspective of the monies Defendant unjustly retained, while Plaintiffs' GBL §§ 349 and 350 claims evaluate remedies from the perspective of what Plaintiffs lost.

///

///

---

[12] *See McCracken v. Verisma Systems, Inc.*, No. 14-CV-6248, 2017 U.S. Dist. LEXIS 73666, at *22-23 (W.D.N.Y. May 15, 2017) (Because § 349 requires "proof that a defendant's acts are directed to consumers," which is not an element of unjust enrichment, the court found that the plaintiffs' unjust enrichment claim was not duplicative of their § 349 claim.); *Warner v. StarKist Co.*, No. 18-CV-406, 2019 U.S. Dist. LEXIS 48587, at *7 (N.D.N.Y. Mar. 25, 2019) (finding unjust enrichment claim not duplicative of GBL § 350 claim because "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350").

FIRST AMENDED CLASS ACTION COMPLAINT

## NEW YORK LAWS SHOULD APPLY TO THE NATIONWIDE CLASS

189.    New York has an interest in prohibiting Defendant's unlawful business practices and to deter such behavior, all of which stems from New York. Defendant's false advertising, development of campaigns, name selection, ultimate decisions to manufacture, develop, and sell the products with the prominent "C + Collagen" labels which do not contain any collagen, originate from New York. All Defendant's decision-making processes occur in New York.

190.    New York is at the heart of Defendant's fraudulent activities, where Products are developed, manufactured, and sold from New York, with false advertising label developed in New York. All Defendant's contracts related to the sale of these products at issue occur in from New York. Defendant's primary business offices are located in New York.

191.    If all class members were required to proceed under their own statutes, and file cases across 50 different states, the judicial system in 50 states would be overburdened and significantly impacted. In fact, New York courts have a special obligation to undertake the burden of this litigation to (a) protect the nationwide consumers and other affected businesses engaged in honest advertising; (b) avoid the inconsistent rulings; and (c) avoid overburdening the judicial system across the entire nation.

192.    This action, and application of New York laws to the nationwide class would promote judicial economy, and provide recovery to the nationwide claimants, and ensure that the New York businesses comply with New York laws, avoid defrauding nationwide consumers by enticing them to buy their products through false and misleading advertising, and ensuring transparency in the marketplace.

193.    New York has significant interests in regulating and affecting conduct within its borders, especially since Defendant is incorporated in the state of New York and perpetrating the

47

FIRST AMENDED CLASS ACTION COMPLAINT

fraudulent advertising scheme from New York.

194. In the alternative, Defendant's actions constitute violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states. Defendant violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

195. Nationwide Class Members are victims of the same misconduct as Plaintiffs. Defendant sold the same Products nationwide with the same deceptive packaging, using the same manufacturing processes. Just as is the case for all New Yorkers, the claims of false advertising will present uniform issues of material fact for Class Members nationwide, including whether the labeling was likely to deceive, whether the Products contain collagen, and how much more money or premium amount Plaintiffs and the Class paid for the Products than they actually received.

196. In light of the uniform alleged misconduct, the elements that need to be proven under the consumer protection laws of the fifty states and the District of Columbia (collectively, "States") are substantively identical. To the extent differences exist, they are immaterial. Plaintiffs have the incentive, in proving the violations of their own state laws, to prove all elements of all States laws. Filed herewith as Appendices A and B are a summary chart and a detailed review, including statutory and case citations in support thereof, respectively, which demonstrate the predominance of common issues and immateriality of any differences. To wit:

197. **Right of Action.** All States have established a private right of action to challenge

FIRST AMENDED CLASS ACTION COMPLAINT

false advertising.[13] In addition, class treatment is available for violations of all States' laws.[14]

198.    **Prohibition of Deceptive Conduct.** All States prohibit the alleged misconduct in one of two ways. Forty-five states mirror New York's broad prohibitions in GBL § 349 against any deceptive conduct.[15] Plaintiffs will adequately represent this class. The remaining states – Colorado, Mississippi, Oregon, Tennessee, and Texas – have narrower statutes which only prohibit

[13] Alabama, California, Florida, Illinois Indiana, Louisiana, Maine, Maryland, Minnesota, and Tennessee require pre-suit notice. Defendant has been on notice that it has breached the challenged warranties and adopted challenged representations herein long before the filing of this action. Plaintiffs' counsel delivered notice letters pursuant to California Civil Code § 1750, *et seq.*, which set forth the claims of the Class concerning the Products' false, misleading, deceptive, unlawful, unfair, and fraudulent claims. On May 23, 2019 this written notice was sent to Defendant via certified U.S. mail and on July 27, 2020 written notice was sent to Defendant via electronic mail.

[14] While seven states' statutes (Arkansas, Alabama, Georgia, Louisiana, Tennessee, Montana, and South Carolina) prohibit class actions, numerous district courts have found that that these prohibitions are not enforceable in federal court and that classes may still be certified under Rule 23 in light of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See, e.g., Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) (allowing Alabama class actions); *Mounce v. CHSPSC, LLC*, 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017) (allowing Arkansas class actions); *In re Hydroxycut Marketing & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) (allowing Georgia, Louisiana, Montana, South Carolina, and Tennessee class actions); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) (allowing South Carolina and Montana class actions); *Wittman v. CB1, Inc.*, 2016 WL 3093427 (D. Mont. June 1, 2016) (allowing Montana class actions); *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (allowing South Carolina class actions); *Reed v. Dynamic Pet Prods.*, 2016 WL 3996715 (S.D. Cal. July 21, 2016) (allowing Louisiana class actions); *Andren v. Alere, Inc.*, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) (allowing Georgia class action). *But see Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) (disallowing Tennessee class actions); *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2015) (disallowing South Carolina class actions). To the extent this Court has concerns about any states' inclusion in the class with respect to consumer protection statutory claims, they can be included in the nationwide class solely with respect to unjust enrichment claims.

[15] These states are Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

FIRST AMENDED CLASS ACTION COMPLAINT

specific deceptive acts. Such specific deceptions and misrepresentations closely parallel the definition of false advertising set forth in GBL § 350, and these acts exactly mirror the California Legal Remedies Act which includes misrepresentations as to the "characteristics" or "advertising goods… with the intent not to sell them as advertised." *See, e.g.,* Cal. Civ. Code 1770(a)(5), (9); Colo. Rev. Stat. § 6-1-105 (1)(e), (i); MS Code § 75-24-5(e), (i); OR Rev. Stat. § 646.608(e), (i); Tenn. Com. Code § 47-18-104(b)(5), (9); Tex. Bus & Com. Code § 17.46(5), (9).[16] Plaintiffs have adequately alleged that Defendant's labeling and advertising, has misrepresented the "characteristics" of the Products by leading reasonable consumers to believe that the Products contain collagen, when they do not.

199.   **Knowledge and Intent.** Thirty-three states, including New York, do not require a showing of either knowledge or intent, and thus, Plaintiffs may adequately represent the interests of the class members from 28 other states which impose no such requirement.[17] New Jersey, Arizona, and Delaware require a showing of knowledge and intent in cases involving the concealment of a material fact; Plaintiffs have alleged herein that Defendant had knowledge at all relevant times that the Products did not contain collagen, and despite this knowledge, included the word "collagen" on the Products' label with the intention that consumers rely on the uniform "collagen" misrepresentation in making their purchase decisions.[18]

---

[16] Arkansas' statute also specifically prohibits most of these same activities, but goes on to note that the practices made unlawful under the act are "not limited to" the specific activities identified in the statute. Ark. Bus. & Com. Code § 4-88-107(a)

[17] These additional states are Alabama, Alaska, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

[18] Colorado, Indiana, Kansas, Maryland, Nevada, New Hampshire, New Mexico, South Carolina, Utah, and Wyoming have statutes similar to the CLRA and like Arkansas, requiring a showing of knowledge and/or intent for some or all of the key provisions at issue in this case. Arizona,

FIRST AMENDED CLASS ACTION COMPLAINT

200.    **Reliance.** The statutes of New York, along with 29 other states, do not require a showing on "reliance," but rather, the lesser standard of proximate causation or ascertainable loss. Here, Plaintiffs' theory of loss causation is the same for each class member, namely that Defendant's misrepresentation resulted in a price premium. Plaintiffs' allegations satisfy the reliance requirement in these 30 states.[19] 14 states require reliance by the named plaintiff as Plaintiffs have alleged herein. Colorado, Maryland, and California have expressly held there need not be any showing of reliance by absent class members.[20] Others have not answered the reliance question.[21] Alternatively, pending judgment on Defendant's liability to consumers pursuant to the States statutes, consumers in states who maintain an absent reliance requirement may be excluded from the consumer protection class and permitted to pursue only their unjust enrichment claims.

201.    **Remedies.** Differences among the States' remedial schemes likewise pose no bar to pursuing claims on behalf of a nationwide class. All states provide for compensatory damages, the amount of which will be the premium determined by the jury. All but twelve state statutes provide for injunctive relief, and the Court can easily fashion an injunction which excludes these twelve states.[22]

---

Illinois, Iowa, Minnesota, and North Dakota require a showing that the defendant intended for the plaintiff to rely on the misrepresentation, which is a lesser level of intent and thus would be necessarily proven if there is violation of the Arkansas law.

[19] Alaska, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin.

[20] *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009); *Patterson v. BP Am. Prod. Co.*, 240 P.3d 456, 469 (Colo. App. 2010), aff'd, 263 P.3d 103 (Colo. 2011); *Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 358–59, 726 A.2d 702 (1999); *Pitts v. Am. Sec. Ins. Co.,* 144 N.C. App. 1, 14 (2001), aff'd, 356 N.C. 292 (2002).

[21] Georgia, Indiana, Virginia, West Virginia, and Wyoming.

[22] The state statutes that do not provide for injunctive relief in a consumer class action are Alabama, Arkansas, Colorado, Louisiana, Maryland, Mississippi, Montana, North Dakota,

FIRST AMENDED CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray

for judgment and relief on all Causes of Action as follows:

    A.  An order enjoining Defendant's unlawful behavior to ensure statutory complaint

        as set forth herein;

    B.  Restitutionary, actual, statutory, compensatory, and punitive damages; and

    C.  Reasonable attorneys' fees and costs.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all triable issues.

DATED: March 26, 2024                **CLARKSON LAW FIRM, P.C.**

                                        /s/ *Ryan J. Clarkson*
                                        Ryan J. Clarkson, Esq.
                                        Yana Hart, Esq. (*pro hac vice*)
                                        Tiara Avaness, Esq. (*pro hac vice*)

                                        *Counsel for Plaintiffs and the Proposed*
                                        *Classes*

---

Oregon, South Carolina, Virginia, and Wyoming. The other 38 states specifically authorize injunctive relief.

FIRST AMENDED CLASS ACTION COMPLAINT